No. 24-40816

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

TIERRA CALIENTE MUSIC GROUP, S.A. DE C.V.,
*doing business as* REMEX MUSIC;
MIDAS MUSICAL, INCORPORATED,

*Plaintiffs-Appellees/Cross-Appellants,*

v.

SER-CA DISCOS, INCORPORATED,

*Defendant-Appellant/Cross-Appellee.*

On Appeal from the United States District Court
for the Southern District of Texas

**DEFENDANT APPELLANT/CROSS-APPELLEE
SER-CA DISCOS, INCORPORATED'S BRIEF**

Yocel Alonso
ALONSO, PLLC
130 Industrial Blvd., Suite 110
P.O. BOX 45
Sugar Land, TX 77487
Telephone (281) 240-1492
Email: Yocel@Alonsolaw.com

Martin J. Siegel
LAW OFFICES OF
   MARTIN J. SIEGEL, P.C.
2222 Dunstan
Houston, TX 77005
Telephone: (281) 772-4568
Email: Martin@Siegelfirm.com

*Attorneys for
Defendant-Appellant/Cross-Appellee*

**No. 24-40816**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

TIERRA CALIENTE MUSIC GROUP, S.A. DE C.V.,
*doing business as* REMEX MUSIC;
MIDAS MUSICAL, INCORPORATED,

*Plaintiffs-Appellees/Cross-Appellants,*

v.

SER-CA DISCOS, INCORPORATED,

*Defendant-Appellant/Cross-Appellee.*

---

**CERTIFICATE OF INTERESTED PERSONS**

---

The undersigned counsel of record certifies that the following listed persons and entities described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Plaintiffs-Appellees/Cross-Appellants, affiliated entities and persons, and counsel:

Tierra Caliente Music Group, S.A. De C.V.

Midas Musical, Inc.

Remex Music

i

German Chavez

Domingo Chavez

Raymond L. Thomas

Ray Thomas, P.C.

David Sanchez

Sanchez Medina, PLLC

Ricardo Pumarejo

Pumarejo Law

Defendant-Appellant/Cross-Appellee, affiliated entities and persons, and counsel

Ser-Ca Discos, Inc.

Discos y Cintas Serca, S.A. de C.V.

Promociones Care S Del RL de C.V.

Servando Cano Resendez

Adrian Rafael Martinez

Resnick & Louis, PC

Yocel Alonso

Alonso PLLC

Martin Siegel

Law Offices of Martin J. Siegel, P.C.

s/     *Martin J. Siegel*
Martin J. Siegel
*Attorney of Record for*
*Defendant-Appellant/Cross-Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

This appeal is unusual and merits oral argument. It concerns rival Mexican record labels and their dispute over rights to commercialize the music and videos of a particular band. It follows a jury trial and represents the culmination of six years of complex litigation over competing claims under the Digital Millenium Copyright Act as well as state law. The case is therefore factually and legally complex, and oral argument would assist the Court's understanding of the uncommon matters involved.

Moreover, Appellant's central point on appeal challenges a district court's application of federal preemption under the Copyright Act to dismiss several state law claims arising from Appellees' having caused the band to desert its original record label and breach an exclusive distribution contract. Such preemption is far from routine, and the Court would benefit from oral argument in considering this relatively rare legal issue.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................... i

STATEMENT REGARDING ORAL ARGUMENT .................................... iv

TABLE OF CONTENTS ................................................................ v

TABLE OF AUTHORITIES ........................................................ vii

STATEMENT OF JURISDICTION ...................................................... xii

STATEMENT OF ISSUES PRESENTED FOR REVIEW ........................... xiii

INTRODUCTION ......................................................................... 1

STATEMENT OF THE CASE ............................................................. 4

    I.    The Parties ................................................................. 4

    II.    Ser-Ca's Agreement to Distribute
           La Leyenda's Music .................................................. 5

    III.    The Chavez Brothers' Signing of La Leyenda
           and Distribution of its Music Despite Ser-Ca's
           Exclusive Rights ....................................................... 8

    IV.    Procedural History .................................................. 11

           A.    Pretrial Proceedings ..................................... 11

           B.    Trial and Entry of Judgment ......................... 14

SUMMARY OF THE ARGUMENT ................................................... 17

ARGUMENT ............................................................................. 19

    I.    The District Court Erred in Dismissing Ser-Ca's
           State Law Claims Because They Are Not
           Preempted by the Copyright Act ............................. 19

A.     The Standard of Review is De Novo ............................ 19

B.     Ser-Ca's State Law Claims Are Not Preempted ............ 19

     1.    Preemption is Inapplicable Where
           the State Claim Targets Conduct
           Beyond Mere Reproduction................................ 19

     2.    Ser-Ca's State Claims Require Proof
           of Extra Elements Beyond Mere
           Reproduction and Therefore Aren't
           Preempted ........................................................... 26

II.    The District Court Abused its Discretion in Refusing
      to Grant the Attorneys' Fees Ser-Ca Requested ...................... 30

A.     The Standard of Review is Abuse of Discretion............ 31

B.     The Court's Rejection of Attorneys'
        Fees for Ser-Ca Was an Abuse of Discretion ............... 31

     1.    Standards for Granting Fees Under the
           DMCA and Copyright Act ................................... 31

     2.    The Court Abused its Discretion Here................. 33

III.   The Court Should Order Entry of a Broader
      Declaratory Judgment and Permanent Injunction........................39

A.     The Standard of Review is De Novo ............................ 40

B.     The District Court Erred in Refusing to Broaden
        The Declaratory Judgment and Permanent
        Injunction as Ser-Ca Requested .................................... 41

CONCLUSION ................................................ 46

CERTIFICATE OF SERVICE ............................. 48

CERTIFICATE OF COMPLIANCE ..................... 49

## TABLE OF AUTHORITIES

**Cases**                                                                          **page:**

*Abraham v. Alpha Chi Omega,*
  708 F.3d 614 (5th Cir.), *cert. denied*, 571 U.S. 940 (2013)....................... 42

*Alcatel USA, Inc. v. DGI Tech., Inc.,*
  166 F.3d 772 (5th Cir. 1999)............................................................... 20, 25

*Aspen Tech., Inc. v. M3 Tech., Inc.,*
  569 F. App'x 259 (5th Cir. 2014) ............................................................. 42

*Ball v. LeBlanc,*
  792 F.3d 584 (5th Cir. 2015).................................................................... 41

*Banco Mercantil de Norte, S.A. v. Paramo,*
  114 F.4th 757 (5th Cir. 2024)............................................................. 31, 38

*Batiste v. Lewis,*
  976 F.3d 493 (5th Cir. 2020).................................................................... 32

*Califano v. Yamasaki,*
  442 U.S. 682 (1979)........................................................................... 41, 45

*Carson v. Dynegy,*
  344 F.3d 446 (5th Cir. 2003).................................................................... 23

*Computer Mgmt. Assist. Co. v. Robert F. DeCastro, Inc.,*
  220 F.3d 396 (5th Cir. 2000)............................................................. 23, 24

*Concise Oil & Gas P'ship v. Louisiana Intrastate Gas Corp.*
  986 F.2d 1463 (5th Cir. 1993).................................................................. 41

*Daboub v. Gibbons,*
  42 F.3d 285 (5th Cir. 1995)......................................................... 25, 26, 29

*Davis v. Laroda,*
  2008 WL 11349744 (N.D. Tex., April 3, 2008) ........................................ 25

*Digital Drilling Data Sys., L.L.C. v. Petrolink Serv., Inc.*,
  965 F.3d 365 (5th Cir. 2020) ................................................................ *passim*

*Doe v. Lee*,
  102 F.4th 330 (6th Cir. 2024) ........................................................ 44

*E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*,
  731 F.3d 444 (5th Cir. 2013) ......................................................... 40

*Engel v. Teleprompter Corp.*,
  732 F.2d 1238 (5th Cir. 1984) ....................................................... 32

*Environment Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
  824 F.3d 507 (5th Cir. 2016) .................................................... 40, 43

*Erosion Prevention Prod., LLC v. Pave/lock/plus II*,
  2023 WL 9105685 (S.D. Tex., Nov. 22, 2023) ......................................... 24

*Fed'n of State Massage Therapy Bds. v.*
*Mendez Master Training Center, Inc.*,
  2018 WL 3862101 (S.D. Tex., Aug. 14, 2018) ........................................ 25

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) ........................................................ 32, 36, 37

*Galiano v. Harrah's Operating Co.*,
  416 F.3d 411 (5th Cir. 2005) ......................................................... 37

*Gill v. Whitford*,
  585 U.S. 48 (2018) ................................................................ 42

*Globeranger Corp. v. Software AG United States of Am.*,
  836 F.3d 477 (5th Cir. 2016) .............................................. *passim*

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
  832 S.W.2d 39 (Tex. 1992) ......................................................... 28

*Hunn v. Dan Wilson Homes, Inc.*,
  789 F.3d 573 (5th Cir.), *cert. denied*, 577 U.S. 1031 (2015) ..................... 32

*Inwood Nat'l Bank v. Fagin*,
    706 S.W.3d 342 (Tex. 2025) ..................................................... 28

*Johnson v. Miller*,
    126 F.4th 1020 (5th Cir. 2025) .................................................. 19

*Keck v. Mix Creative Learning Ctr., LLC*,
    116 F.4th 448 (5th Cir. 2024) ............................................... 31, 35

*Kirtsaeng v. John Wiley & Sons*,
    579 U.S. 197 (2016) .................................................... 31, 32, 37

*MDY Indus., LLC v. Bizzard Ent., Inc.*,
    629 F.3d 928 (9th Cir. 2010) ..................................................... 24

*MetroPCS Wireless, Inc. v. Virgin Mobile USA, LP*,
    2009 WL 3075205 (N.D. Tex., Sept. 25, 2009) ............................. 24, 25

*Mock v. Garland*,
    75 F.4th 563 (5th Cir. 2023) ................................................. 41, 45

*Motion Med. Tech. v. Thermotek, Inc.*,
    875 F.3d 765 (5th Cir. 2017) ........................................... 19, 21, 35

*Optimum Return LLC v. CyberKatz Consult., Inc.*,
    2004 WL 827835 (N.D. Tex., March 26, 2004) ................................ 25

*Prandini v. Nat'l Tea Co.*,
    585 F.2d 47 (3d Cir. 1978) ....................................................... 39

*Progressive Corp. v. Integon P&C Corp.*,
    947 F.2d 942 (4th Cir. 1991) (table) ........................................... 24

*Riley v. City of Jackson*,
    99 F.3d 757 (5th Cir. 1996) ..................................................... 37

*Rolex Watch USA v. Meese*,
    158 F.3d 816 (5th Cir. 1998), *cert. denied*, 526 U.S. 1133 (1999) ........... 40

*Schexnayder v. Hartford Life and Acc. Ins. Co.*,
   600 F.3d 465 (5th Cir. 2010)........................................................ 36

*Sims v. Jefferson Downs Racing Ass'n, Inc.*,
   778 F.2d 1068 (5th Cir. 1985).................................................... 36

*Stromback v. New Line Cinema*,
   384 F.3d 283 (6th Cir. 2004)...................................................... 24

*Sturdza v. United Arab Emirates*,
   281 F.3d 1287 (D.C. Cir. 2002).................................................. 24

*Synergy Indus. LP v. Nat'l Oilwell Varco, LP*,
   2019 WL 3325637 (S.D. Tex., March 26, 2019) ...................... 24

*Taquino v. Teledyne Monarch Rubber*,
   893 F.2d 1488 (5th Cir. 1990)....................................... 20, 24, 29

*Telecom Tech. Serv., Inc. v. Rolm Co.*,
   388 F.3d 820 (11th Cir. 2004).................................................... 24

*Texas v. Becerra*,
   89 F.4th 529 (5th Cir.), *cert. denied*, 145 S. Ct. 139 (2024) ...................... 40

*Texas v. United States*,
   126 F.4th 392 (5th Cir. 2025) ......................................... 40, 41, 45

*Topalian v. Ehrman*,
   3 F.3d 931 (5th Cir. 1993) .................................................. 36, 38

*Trevino v. MacSports, Inc.*,
   2009 WL 2411916 (E.D. La., Aug. 5, 2009) ............................ 24

*Ultraflo Corp. v. Pelican Tank Parts, Inc.*,
   845 F.3d 652 (5th Cir.), *cert. denied*, 582 U.S. 914 (2017)................ 20, 25

*Universal Print Serv., Inc. v. Dresser-Rand Grp.*,
   571 S.W.3d 346 (Tex. App. – Houston [1st Dist.] 2018).......................... 28

*United States v. Medica Rents Co., Ltd.*,
  2008 WL 3876307 (5th Cir. Aug. 19, 2008) .............................................. 36

*Virgin Records Am. v. Thompson*,
  512 F.3d 742 (5th Cir. 2008) ................................................................. 31, 32

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) .................................................................................... 40

*XPEL Tech. Corp. v. Am. Filter Film Dist.*,
  2008 WL 3540345 (W.D. Tex., Aug. 11, 2008) ........................................ 25

*Zinna v. Congrove*,
  680 F.3d 1236 (10th Cir. 2012) ................................................................. 38

## Statutes and Rules

17 U.S.C. § 102 ............................................................................................. 2

17 U.S.C. § 106 ............................................................................................. 2

17 U.S.C. § 505 ........................................................................................... 31

17 U.S.C. § 512 ...................................................................................*passim*

28 U.S.C. § 1454 ....................................................................................... xii

28 U.S.C. § 1331 ....................................................................................... xii

28 U.S.C. § 1291 ....................................................................................... xii

FED. R. CIV. P. 12 ................................................................................. 13, 19

FED. R. CIV. P. 56 ....................................................................................... 12

## STATEMENT OF JURISDICTION

This case was removed to the district court under 28 U.S.C. § 1454. ROA.28-31.  The district court had subject matter jurisdiction pursuant to that section and 28 U.S.C. § 1331.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this appeal is taken from the district court's final judgment entered on May 16, 2024, disposing of the entire action and all claims.  ROA.4161-62.  Following judgment, Defendant/Counter-plaintiff Ser-Ca Discos, Inc. timely moved for a new trial and to alter or amend the judgment on June 13, 2024, ROA.4163-89, which the district court denied by order entered on November 14, 2024.  ROA.4197-98. Defendant/Counter-plaintiff Ser-Ca Discos, Inc.'s timely notice of appeal was filed on December 11, 2024.  ROA.4199-4200.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    A record company allegedly induced a band to break its preexisting, exclusive contract with a rival record label, causing broad and varied harm. State claims covering such conduct – tortious interference, misappropriation, and unjust enrichment – are only preempted under the Copyright Act when the tortfeasor's actions are limited to reproducing copyrighted work.  Did the district court err by applying preemption here, where different and greater misconduct is alleged?

2.    The district court refused to award attorneys' fees under the Digital Millenium Copyright Act to a prevailing party following trial that concluded a complex, six-year litigation.  Such a fee award should be the rule, not the exception, but fees were denied here because the jury awarded $50,000 in damages compensating for *different* fees incurred before the litigation.  Did the trial court abuse its discretion in making an exception and denying the requested, court-ordered fees?

3.    The district court entered a declaratory judgment and injunction narrower than that supported by the evidence at trial.  Declaratory judgments and injunctions should clarify the parties' rights and fully protect the prevailing party from injury.  Did the court err here by granting insufficiently protective relief?

## Introduction

Ser-Ca, the Appellant and Cross-Appellee in this case, is the American corporate sibling and licensee of Serca Mexico.[1]  Serca Mexico, in turn, had an exclusive contract with a Mexican band called La Leyenda to commercialize and distribute the band's music.  While that contract was in effect, the Chavez brothers, who owned one of Serca Mexico's much larger rivals, Tierra Caliente, signed La Leyenda to their own deal and started having new songs and videos by the band posted on digital sales platforms like YouTube and iTunes.  The rivals then fired off opposing notices to the digital platforms, each claiming the copyright to La Leyenda's songs and videos.  After that, the Chavez companies sued Ser-Ca in Texas state court.  Ser-Ca removed to the court below, where the parties asserted dueling claims under a provision of the Digital Millenium Copyright Act of 1998 ("DMCA") that establishes civil liability for knowing misrepresentations in requests to digital providers to remove or restore copyrighted content. 17 U.S.C. § 512(f).  Ser-Ca also brought claims under Texas state law against the Chavez

---

[1]    Defendant-Appellant Ser-Ca, Discos, Incorporated is referred to as "Ser-Ca."  Ser-Ca's corporate sibling, Discos y Cintos Serca, S.A. de C.V., is referred to as "Serca Mexico." Plaintiff-Appellee, Tierra Caliente Music Group, S.A. De C.V., doing business as Remex Music, is referred to as "Tierra Caliente" or, when the reference is to Remex Music specifically, "Remex."  Plaintiff-Appellee Midas Musical, Incorporated is referred to as "Midas."  Together, the two Plaintiffs-Appellees are referred to as "the Chavez companies," after their owners German and Domingo Chavez.  German and Domingo Chavez are brothers referred to collectively as "the Chavez brothers."

companies for intentional interference with its assigned contractual rights with La Leyenda, misappropriation, and unjust enrichment.

The district court found that Serca Mexico had the exclusive contractual right to commercialize La Leyenda's music at the time when the Chavez companies had the band's songs and videos uploaded for sale online. It therefore dismissed the Chavez companies' claim that Ser-Ca violated the DMCA by misrepresenting copyright status to online sellers. On the contrary, Ser-Ca's statements were accurate. Correspondingly, a jury found for Ser-Ca on *its* DMCA claim and determined that Tierra Caliente knowingly made misrepresentations to YouTube. Before trial, however, the district court dismissed Ser-Ca's state law claims under Fed. R. Civ. P. 12(c), finding them preempted by the Copyright Act, 17 U.S.C. §§ 102, 106.

Ser-Ca now raises three issues on appeal. First, the district court erred in holding that the Copyright Act preempts Ser-Ca's state law claims. Preemption in this context hinges on whether the defendant's alleged conduct goes beyond merely reproducing or disseminating the plaintiff's copyrighted work. If it does, there is an "extra element" to the claim, and it survives preemption. Here, Ser-Ca alleged (and trial evidence corroborated) that the Chavez companies did much more than just help themselves to Ser-Ca's copyrighted music and videos – they caused La Leyenda to break its contract with Serca Mexico, used improper means

to interfere with and damage Ser-Ca's larger commercial interests and relationships with other bands, and obtained the benefit of a new commercial relationship through undue advantage. Because these actions extended well beyond mere reproduction of Ser-Ca's copyrighted work – and because the torts are intended to protect very different and wider commercial interests than just copyright – Ser-Ca's claims aren't preempted and should be remanded for trial.

Second, the district court abused its discretion in denying Ser-Ca's request for attorney's fees as the prevailing party under the DMCA. The jury awarded $50,000 in fees as compensatory damages for loss Ser-Ca suffered in dealing with YouTube before this case. But the district court denied Ser-Ca's post-trial motion for reimbursement of the much greater amount of fees expended during this six-year litigation. This Court's cases make clear that, under the Copyright Act and the DMCA, a court-ordered fee award to the prevailing party should be the rule, not the exception, and the district court erred in treating this as a special case where no fees are warranted.

Finally, Ser-Ca requested a broader declaratory judgment and permanent injunction than that ordered by the district court. The existing declaratory judgment and injunction fail to correspond to the trial evidence or fully protect Ser-Ca's rights, especially given their repeated violation by the Chavez companies. The judgment should therefore be reversed in this respect, too.

To summarize, this Court should reverse the portion of the judgment dismissing Ser-Ca's state law claims against the Chavez companies for intentional interference, misappropriation, and unjust enrichment and remand them for trial; reverse and remand for a consideration of fees under the DMCA applying the correct factual and legal guidelines; and vacate and remand the declaratory judgment and permanent injunction with instructions to issue those in the form requested by Ser-Ca below.

## Statement of the Case

### I.      The Parties

Ser-Ca and Serca Mexico are owned and operated by Servando Cano Resendez and members of his family.   ROA.1999.  Serca Mexico is a Mexican record company originating in the 1960s that produces and distributes music, while Ser-Ca is its American arm.  ROA.1999, ROA.4467-72, ROA.4468-69, ROA.5137-39.  Artists sign with Serca Mexico, which assigns rights to distribute their music in the United States to Ser-Ca.  ROA.4472.  Both companies promote their artists through radio programming, awards shows, television appearances, concert tours, and the like.  ROA.4473-74.  Ser-Ca also distributes artists' music by selling records and CDs to distributors and, more recently, making the music available for downloading and online streaming on popular sites like iTunes, Spotify and YouTube.  ROA.4475-76, ROA.4489-90.  A third party called "Select-

O-Hits" acts as an intermediary between records labels and the digital platforms and arranges for the uploading of content onto the sites. ROA.4754-55, ROA.5150-51. The two companies invest heavily in promoting their artists' careers to industry players and fans and arrange for artists to work with highly regarded songwriters. ROA.4480-85.

The Chavez brothers own the rival Mexican recording and promotion company Tierra Caliente, which does business as Remex, as well as Midas. ROA.2000-01, ROA.4910.[2] Tierra Caliente is a Mexican company and record label, through Remex, while Midas is an American company. ROA.4974, ROA.5064. Tierra Caliente is much larger than Serca Mexico, with more digital customers and views to its artists' online pages. ROA.5044-45.

## II.    Ser-Ca's Agreement to Distribute La Leyenda's Music

Serca Mexico first signed La Leyenda, a band that plays Mexican Norteño music, in 2003. ROA.4502; Pl. Exh. 2.[3] "[W]hat made the most sense to us," Eliseo Robles, the head of La Leyenda, explained, "was to go with Ser-Ca, because all the other groups, including the ones we admired, were with Ser-Ca at the time."

---

[2]   German Chavez's name is misrendered as "Herman" in the trial transcript. *Compare* ROA.4908 *with* Pl. Exh. 17.

[3]   All trial exhibits were sealed before transmission to this Court as part of the appellate record. Ser-Ca's motion to unseal the exhibits is pending. Because the exhibits have not yet been unsealed and are inaccessible even to appellate counsel, the "ROA" pagination is unavailable, and the exhibits are cited herein by trial exhibit number.

ROA.5350.  Serca Mexico's contract with La Leyenda was renewed periodically,

ROA.4502-03, including in 2011.  Pl. Exh. 1; ROA.2006.

La Leyenda wasn't well-known when they signed with Serca Mexico,

ROA.4484-85, but the company successfully promoted the band:

> [W]e started getting – putting them to work with the best songwriters
> that we have at the time…. We started putting them in concerts…. we
> started putting them with our all contacts, putting them at the radio…
> and the market at first became Texas and then started growing, and
> [they were] on national TV, national radio festivals…. And then they
> went on to play like in big concerts, opening, opening act.

ROA.4487.  Serca Mexico's efforts led to the band's first album, and "they began

to be heard on the radio and on TV programs and in cities where they hadn't yet

been to do live dances or events."  ROA.5212.  La Leyenda also began to appear at

concerts with more established and acclaimed acts and was headed toward winning

comparable popularity.  ROA.5213-14.

Serca Mexico's contract with La Leyenda gave Serca Mexico exclusive

rights to commercialize, publish and distribute the band's music in any format,

including albums, videos, live recordings, and digital media.  Pl. Exh. 1, ¶¶

Second, Third, Eighth; ROA.2005.  These recordings became the "exclusive

property" of Serca Mexico.  Pl. Exh. 1, ¶ Second.  La Leyenda was prohibited from

recording music for other parties, and the band and third parties were expressly

barred from any publication or distribution of La Leyenda's music during the

contract term.  Pl. Exh. 1, ¶ Third; ROA.2001-02.  That term was five years, with

an additional provision that the contract would continue in effect automatically if La Leyenda failed to deliver promised recordings. Pl. Exh. 1, ¶ Twelfth. Serca Mexico, in turn, assigned its rights under the contract to Ser-Ca in order to accomplish distribution of La Leyenda's music in the United States. ROA.4504, ROA.4508; Pl. Exh. 6.

La Leyenda and Serca Mexico litigated the enforceability of their contract in Mexico, with La Leyenda maintaining that Ser-Ca altered the start date of the contract from 2010 to 2012, and that the contract therefore expired in February 2015. ROA.2001-02, ROA.5354. Ser-Ca contended that the contract genuinely commenced in 2012. ROA.4837. In 2017, the Mexican courts determined that the contract was binding; that it took effect on February 15, 2011; and that it remained in force even beyond the expiration of its five-year term in 2016 because La Leyenda still owed two additional albums to Serca Mexico under the agreement, thus continuing the contract in operation until those albums were delivered. ROA.2002, ROA.2006, ROA.4832; Pl. Exh. 38. Because La Leyenda didn't deliver the contractually required albums to Serca Mexico until February 3, 2021, the parties' contract remained operative until then. ROA.4735-36. The district court, in turn, held that the Mexican judgment must be given preclusive effect in this case under principles of international comity. ROA.2027-30.

### III.    The Chavez Brothers' Signing of La Leyenda and Distribution of its Music Despite Ser-Ca's Exclusive Rights

Although their companies were already much larger than the Ser-Ca entities, the Chavez brothers repeatedly tried to lure away artists under contract with Serca Mexico to switch to Tierra Caliente.  ROA.4519 ("they tried to recruit all of them").  This succeeded with several acts and eventually worked with La Leyenda, which signed a contract with the Chavez brothers on August 27, 2015, when the band was still under its exclusive contract with Serca Mexico.  ROA.2000, ROA.4520-23, ROA.5363; Pl. Exh. 17.  Two months later, Robles received promissory notes from the Chavezes totaling $315,000.  ROA.4530-33, ROA.4952-54; Pl. Exhs. 20, 21, 22.  According to Robles, these were loans for acquisition of a bus for use by the band.  ROA.4954.  He claimed that La Leyenda actually signed with the Chavez brothers for no payment at all.  ROA.5424.

The Chavez brothers signed La Leyenda even though the band didn't provide a release letter from Serca Mexico confirming that it was no longer under contract, as Resendez testified was generally the custom in the music business in Mexico.  ROA.4542-46.  Moreover, the Chavezes' attorney represented La Leyenda in the Mexican litigation over the band's breach of contract with Serca Mexico, and they financed the representation.  ROA.2027, ROA.5409-11.  Robles testified that he believed he could ditch Serca Mexico and sign with the Chavez

brothers because the supposed alteration of the start date of the band's contract with Serca Mexico meant that he was no longer "under contract." ROA.5412-13.

After signing with the Chavez brothers, La Leyenda recorded twelve songs and corresponding videos for the album "10 + 10" under the Remex label, and Tierra Caliente uploaded them to a variety of digital sales platforms. ROA.2003, ROA.4540-41, ROA.4941, ROA.5489-90. The Chavez brothers also obtained endorsement deals with McDonald's and Ford for the band and arranged for performances on the Telemundo television network. ROA.4620-23. The Mexican courts determined that La Leyenda breached its contract with Serca Mexico by recording music for Remex. ROA.5051.

When Resendez learned that the Chavez brothers' companies were distributing La Leyenda's music online, Ser-Ca's counsel sent letters and emails to Apple (iTunes), Amazon, YouTube, Sony Music Entertainment, Facebook, SoundCloud, and Spotify in 2016 and 2017 notifying them under the DMCA, 17 U.S.C. § 512(c)(3), that distributing the music and videos without Serca Mexico's authorization violated Ser-Ca's assigned copyright, given Serca Mexico's exclusive contract with the band. ROA. 4550; Pl. Exh. 24. Such letters are called "take-down" letters or notices, since they threaten legal action by the copyright owner unless the recipient removes the infringing content. ROA.2003, ROA.4550.

In response, Remex submitted "counter notifications" to the digital platforms under the DMCA, 17 U.S.C. § 512(g)(2), disputing Ser-Ca's copyright claim, asserting under penalty of perjury that it possessed copyright to the recordings, and requesting that they be restored on the online platforms for purchase by fans. Pl. Exh. 25.

Soon after, Johnny Phillips, president of Select-O-Hits, obtained the Chavez brothers' commitment to remove the La Leyenda recordings from the websites. Pl. Exh. 24 (SERCA 000135); ROA.4573-74. Three "strikes" from an online retailer for violating copyright or making unsupported claims of violation can result in the site's removal of *all* media uploaded by that party, so both sides had an incentive to resolve the dispute. ROA.172, ROA.4780, ROA.5045. Phillips was "trying to take care of both its customers, Ser-Ca and Remex, saying hey, guys, you all cool it, stop filing these notices and counter-notices because somebody is going to get hurt real bad." ROA.4782.

Nonetheless, the parties dispute whether Remex actually followed through with its pledge to remove the recordings. ROA.4574-76, ROA.4939, 4987. Resendez testified that the songs and videos remained uploaded and available for purchase on Remex's YouTube page for most of the period until the band's contract with Serca Mexico ended in February 2021. ROA.4574-76, ROA.4694-96. Even after the Mexican judgment in 2017 definitively holding that La Leyenda

remained under contract with Serca Mexico until delivery of the promised additional music, the Chavez brothers "continued to maintain that Remex and Midas were the owners of the sound recordings." ROA.4942.

Resendez testified that losing La Leyenda to the Chavez brothers and the Remex label damaged Ser-Ca by signaling that the company was unstable and battling with the Chavez companies, and by causing important artists to begin deserting the label: "when the musical groups see any instability, they ask what's happening, what's going on…. [W]hen they see something like this, they stay away, they – they're scared away about these kind of situations." ROA.4632-33. As he put it, "the artists… see that and they think you did something wrong, when – when we weren't doing something wrong." ROA.4635. As a result, fewer artists approached his family's companies about working together. ROA.4635.

## IV.   Procedural History

### A.    Pretrial Proceedings

This case began when the Chavez companies sued Ser-Ca in Texas state court in 2018 alleging that they held the exclusive right to commercialize La Leyenda's music, that Ser-Ca's claim to the contrary was "fraudulent," and that Ser-Ca's takedown notices constituted a campaign to "undermine [their] business." ROA.38-39, ¶¶ 14, 17.  Ser-Ca removed the action to the district court.  ROA.28-64, ROA.1995-96.  Once in federal court, the Chavez companies amended their

complaint and alleged that Ser-Ca's take-down notices violated the DMCA.

ROA.170-73. Ser-Ca counterclaimed and asserted federal claims under the

DMCA and the Lanham Act as well as state law claims of tortious interference,

misappropriation, common law trademark infringement, and unjust enrichment.

ROA.967-96. Ser-Ca also requested a declaratory judgment that:

> (1) SER-CA owns and/or has the Exclusive Rights to the copyrights to the master sound recordings of the Songs in the United States; (2) that the Counter-Defendants have no copyright ownership or administration rights in the master sound recordings of the Songs; (3) any copyright registrations by Counter-Defendants to SER-CA's Songs are invalid; and (4) that any contract entered into by Counter-Defendants predicated on these fabricated rights to the Songs are null and void.

ROA.980-81. Lastly, Ser-Ca sought a temporary and permanent injunction

prohibiting the Chavez companies "from exercising dominion and control over the

songs." ROA.995.

The district court granted summary judgment to Ser-Ca dismissing the

Chavez companies' DMCA claim in 2022. ROA.1998, 2041. The court held that

international comity required giving preclusive effect to the Mexican courts'

judgment that Serca Mexico's contract with La Leyenda was in effect when Tierra

Caliente uploaded the band's music to online platforms beginning in 2015.

ROA.1998, ROA.2004-08, 2027-30. As a result, Ser-Ca's take-down notices were

proper under the DMCA, 17 U.S.C. § 512(f), mandating dismissal of the Chavez

companies' claim. ROA.2492 ("The September 2017 [Mexican] judgment aids in

12

confirming that Serca filed the takedown notices in good faith, such that the notices 'contained no knowing or material misrepresentations actionable under § 512(f) of the DMCA'").

At the same time, the district court granted the Chavez companies' motion to dismiss Ser-Ca's state law claims for tortious interference with contract, misappropriation, and unjust enrichment under Fed. R. Civ. P. 12(c) as preempted by the Copyright Act.  ROA.2021-24.  The court concluded that these claims did nothing more than "seek to vindicate and preserve [Ser-Ca's] alleged exclusive rights of distribution within the meaning of § 106" of the Copyright Act, and that Ser-Ca "fail[ed] to explain how these claims present any 'extra element' that would otherwise defeat the equivalency test" for preemption.  ROA.2024.

In a follow-up ruling, the district court also rejected the declaratory judgment sought by Ser-Ca, including its request that the Chavez companies had no copyright in La Leyenda songs and videos created while Serca Mexico's contract with the band was operative, that any copyright registrations by any Chavez company for La Leyenda's pre-2021 works are invalid, and that the Chavez brothers' contract with La Leyenda is null and void.  ROA.3578-79.  Instead, the court held that it would only enter a declaratory judgment stating that Ser-Ca "had and retains exclusive rights to U.S. distribution and digital transmission of the subject media."  ROA.3579.  The court held that the evidence

didn't warrant "declar[ing] broader rights of copyright and contract not assigned to Plaintiff by Serca-Mexico, who is not a party to this case."  ROA.3579.   In addition, the district court denied as "premature" Ser-Ca's request for $259,530.00 in attorneys' fees for wining dismissal of the Chavez companies' DMCA claim on summary judgment.  ROA.2224, ROA.2487.

### B.     Trial and Entry of Judgment

Ser-Ca's remaining claims against the Chavez companies for misrepresentation in violation of the DMCA and state and federal unfair competition went to trial in 2024.  The jury found that Tierra Caliente violated the DMCA, 17 U.S.C. § 512(f), by knowingly misrepresenting its copyright to distribute La Leyenda's music to YouTube while the band's exclusive contract with Serca Mexico remained in effect.  ROA.3848-49.  Jurors awarded $50,000 to "compensate Plaintiff for the attorneys' fees it incurred, if any, as a result of YouTube replacing the content or ceasing to disable access to it."  ROA.3850.  The jury found against Ser-Ca on its unfair competition claims.  ROA.3845-47.[4]

In its motion to enter judgment following trial, Ser-Ca renewed its request for a broader declaratory judgment and permanent injunction.  ROA.3854-56. Underlying the request were admissions made by Tierra Caliente and Midas, read

---

[4]  After Ser-Ca concluded its case, the district court decided that Ser-Ca lacked evidence of liability by Midas and so removed mention of that company from the charge, leaving it in the case for purposes of declaratory relief only.  ROA.5568-69, ROA.5592.

into evidence at trial, stipulating that Midas is not the copyright owner of any of the songs at issue and that, "but for" the invalid agreement entered into by La Leyenda and the Chavez brothers in 2015, the Chavezes "did not have the sole and exclusive rights to utilize and control La Leyenda's creative works including songs, videos and albums." ROA.5248-49 (trial testimony), ROA.3369, ROA.3375 (pretrial motion). The district court again declined Ser-Ca's request, holding that the trial evidence only established Ser-Ca's "rights of distribution… in the United States, without more." ROA.4152-53.

Ser-Ca's motion to enter judgment also sought $596,494.00 in attorneys' fees for its defense against the Chavez companies' DMCA claim, which was dismissed on summary judgment, and its successful prosecution of its own DMCA claim at trial. ROA.3855. This was based on trial testimony from Ser-Ca's counsel and billing records admitted into evidence and supplemented with the post-trial motion. ROA.5252-5317, ROA.3855, ROA.3864-4067. The district court denied this request and held that fees beyond the $50,000 awarded by jurors in compensatory damages to Ser-Ca were unwarranted, noting: "The jury heard evidence of the time expended by Serca's counsel throughout the life of the litigation and settled on an amount within the bounds of reasonableness, which the Court will not augment or disturb." ROA.4157.

Following post-trial motions, the district court entered final judgment for Ser-Ca on its DMCA claim, "for which [it] shall recover attorneys' fees in the amount of $50,000.00." ROA.4161. The court also entered judgment for Ser-Ca on the Chavez companies' DMCA claim, dismissed previously on summary judgment. ROA.4161. The court additionally entered the following declaratory judgment:

> Judgment is entered in favor of Serca on its request for a declaration that Serca had and now holds exclusive rights to the U.S. distribution and digital transmission of the song and video recordings made the subject of this lawsuit, for which Serca shall recover supplemental relief in the form of Plaintiffs'/Counter-Defendants' Remex and Midas Musical, Inc.'s (Midas) admitted gross revenue from the use of these rights through the date of judgment.

ROA.4161. Likewise, the court entered "a permanent injunction against Plaintiffs'/Counter-Defendants' continued use of these rights." ROA.4162. Ser-ca's remaining claims were dismissed. ROA.4162

Following final judgment, Ser-Ca moved for judgment as a matter of law, to alter or amend the judgment, and for a new trial. ROA.4163-88. It reiterated its positions that its state claims weren't preempted, that it was entitled to a broader declaratory judgment, and that it should receive greater attorneys' fees. ROA.4163-88. The district court denied the motion. ROA.4197-98.

## Summary of Argument

Ser-Ca makes three arguments for reversal.  First, the district court erred in dismissing Ser-Ca's claims for tortious interference, misappropriation, and unjust enrichment as preempted by the Copyright Act.  Preemption is inapplicable if the alleged conduct and claims sweep beyond mere reproduction of copyrighted work.  That's the case here because Ser-Ca alleges far more than just copying.  The Chavez companies lured La Leyenda away, as they did with other acts, causing the band to breach its exclusive agreement with Serca Mexico and damaging Ser-Ca by scaring off other interested bands and inflicting reputational harm.  The Chavez companies secured a benefit through undue advantage and employed improper means to deprive Ser-Ca of a full commercial relationship, not just isolated revenue from one set of songs and videos.  In addition, the Texas claims exist to protect entirely different and broader commercial interests than copyright.  Preemption therefore doesn't apply, and these claims should be remanded for trial.

Second, the district court abused its discretion in denying Ser-Ca's post-trial application for fees for prevailing on both the Chavez companies' DMCA claim and its own.  An award of attorneys' fees under the Copyright Act and the DMCA to the prevailing party by the district court should be the rule, not the exception.  Yet the district court denied Ser-Ca's request because the jury randomly awarded $50,000 to compensate for fees expended when Ser-Ca was dealing with YouTube,

before this case began. That damages award is not a substitute for fees Ser-Ca expended during this case; nor could the arbitrary sum of $50,000 reasonably approximate the legal fees incurred over the course of six years of hard-fought litigation. The district court's decision to the contrary is an abuse of discretion warranting reversal.

Lastly, the district court denied Ser-Ca's request for a declaratory judgment stating that the Chavez companies lack copyright to the songs and videos at issue, that any such copyright registrations are void, and that the 2015 contract between the Chavez brothers and La Leyenda is legally ineffective. Ser-Ca also sought a permanent injunction barring the Chavez companies from accepting payments from third parties for their exploitation of La Leyenda's songs and videos. The court refused Ser-Ca's request, and granted a narrower declaratory judgment and injunction, on the ground that Serca Mexico isn't a party to the case. But that fact is irrelevant; the requested declaratory judgment would have declared the Chavez companies' rights in a way that protects Ser-Ca and accords with the trial record, and that suffices. The Court should vacate the existing declaratory judgment and injunction and remand for entry of the declaratory judgment and injunction requested by Ser-Ca.

## Argument

### I.     The District Court Erred in Dismissing Ser-Ca's State Law Claims Because They Are Not Preempted by the Copyright Act

#### A.     The Standard of Review is De Novo

The district court dismissed Ser-Ca's state law claims for tortious interference with contract, misappropriation, and unjust enrichment under Fed. R. Civ. P. 12(c).  ROA.2021-24.  The Court reviews rulings granting Rule 12(c) motions de novo, *see Johnson v. Miller*, 126 F.4th 1020, 1026 (5th Cir. 2025), and specifically reviews the legal question of copyright preemption de novo.  *See Motion Med. Tech. v. Thermotek, Inc.*, 875 F.3d 765, 773 (5th Cir. 2017).

#### B.     Ser-Ca's State Law Claims Are Not Preempted

The Texas state law causes of action Ser-Ca alleges require factual showings beyond simple copying of another party's intellectual property.  They also exist to protect distinct economic interests.  As a result, they aren't preempted by the Copyright Act in the circumstances alleged by Ser-Ca and shouldn't have been dismissed.  The Court should reverse that portion of the judgment and remand these claims for trial.

##### 1.     Preemption is Inapplicable Where the State Claim Targets Conduct Beyond Mere Reproduction

"Section 301 of the Copyright Act preempts state law claims that fall within the general scope of federal copyright law."  *Digital Drilling Data Sys., L.L.C. v.*

*Petrolink Serv., Inc*., 965 F.3d 365, 377 (5th Cir. 2020) (*quoting Ultraflo Corp. v. Pelican Tank Parts, Inc*., 845 F.3d 652, 655 (5th Cir.), *cert. denied*, 582 U.S. 914 (2017)).  Preemption turns on whether the state claim falls within the subject matter of copyright and, if so, whether the state claim protects rights equivalent to any of the exclusive rights of federal copyright.  *See id.* at 377-78; *accord Globeranger Corp. v. Software AG United States of Am*., 836 F.3d 477, 484 (5th Cir. 2016).  "We ask, in other words, is state law protecting the same rights that the Copyright Act seeks to vindicate, or is it protecting against different types of interference?  We evaluate the equivalency of the protected rights by applying the 'extra element' test: Preemption does not occur if the state law claim requires one or more qualitatively different elements."  *Id*. at 378 (cleaned up); *accord Globeranger,* 836 F.3d at 484; *Alcatel USA, Inc. v. DGI Tech., Inc*., 166 F.3d 772, 787 (5th Cir. 1999).

Deciding "whether a claim is equivalent requires looking to the actual alleged misconduct and not merely the elements of the state cause of action."  *Id*. at 379 (quoting *Globeranger,* 836 F.3d at 485).  A right conferred by state law "is equivalent if the mere act of reproduction, distribution, or display infringes it." *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990) (affirming district court opinion attached as appendix).  On the other hand, when the defendant "engage[s] in wrongful conduct beyond mere reproduction," an extra

element exists, equivalency is lacking, and there is no preemption. *Digital Drilling*, 965 F.3d at 379; *Motion Med. Tech.*, 875 F.3d at 775; *Globeranger,* 836 F.3d at 488.

In *Digital Drilling*, this Court specifically found that the Copyright Act didn't preempt one of the Texas state law claims Ser-Ca alleges here: unjust enrichment.  The plaintiff in that case, Digidrill, sued the defendant, Petrolink, for obtaining a laptop running Digidrill's program, penetrating Digidrill's database, and developing its own program to siphon off Digidrill's data and transfer it to a different Petrolink program used by third parties.  965 F.3d at 371.  In essence, Petrolink copied Digidrill's data without authorization and surreptitiously made it available to its customers, inducing them to violate their own license agreements with Digidrill.  *Id*. at 371-72.

Because this conduct extended beyond mere reproduction of Digidrill's copyrighted data, this Court held that Digidrill's unjust enrichment claim wasn't preempted:

> Under Texas law an unjust enrichment claim requires showing that one party has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.  Digidrill… contends Petrolink obtained a benefit by taking undue advantage when it surreptitiously installed [Petrolink's program] on various [third party] MWD companies' laptop computers, causing those MWD companies to violate the terms of their [Digidrill] DataLogger licenses…. Digidrill's alleged unjust enrichment claim requires establishing wrongful conduct – i.e., inducing the MWD companies to violate the

express terms of their DataLogger licenses – that goes beyond mere copying.

*Id.* at 379-80. "Had Digidrill merely alleged that Petrolink obtained a benefit at Digidrill's expense by engaging in unauthorized copying," the Court recognized, "Digidrill's claim might well have been preempted by copyright law." *Id.* at 381-82. "But instead, Digidrill premised its unjust enrichment claim on a further element: that Petrolink's benefit was obtained by 'the taking of an undue advantage,' i.e., by causing Digidrill's MWD customers to violate the terms of their DataLogger licenses." *Id.* at 382.

Preemption was also rejected in *Globeranger*. There, the plaintiff, a software company, alleged that the defendant, a rival which successfully outbid the plaintiff for a Navy contract, induced the plaintiff's former employee to breach his employment agreement and disclose the plaintiff's source code. 836 F.3d at 481-82, 486. The defendant then knowingly used the plaintiff's data, manuals and software without permission in order to fill the Navy order. *See id.* Like Ser-Ca, the plaintiff sued for trade secret misappropriation under Texas law, which prohibits acquisition of trade secrets through the breach of a confidential relationship or other improper means. *See id.* at 485.

This Court, in turn, denied preemption because the defendant's "actions go beyond… copying, communicating, and transmitting." *Id.* at 486. That is, "trade secret law protects against not just copying but also any taking that occurs through

22

breach of a confidential relationship or other improper means." *Id.*   Although the defendant claimed it owed no contractual duty to the plaintiff – unlike the plaintiff's former employee or third party licensees, who did – and therefore committed no wrong distinct from reproduction, the Court disagreed.  It was immaterial whether the defendant itself breached an agreement with the plaintiff or simply garnered trade secrets from a source it knew had such obligations.  In the latter "situation, just as when a defendant breaches a duty it owes the plaintiff, there is additional wrongful conduct beyond mere reproduction." *Id.* at 488.  The Court therefore "conclude[d] that [the plaintiff's] trade secret misappropriation claim requires establishing an additional element than what is required to make out a copyright violation: that the protected information was taken via improper means or breach of a confidential relationship." *Id.* at 488.  Accordingly, preemption was denied.  *See id*.

Other Fifth Circuit decisions are similar.  The Court denied preemption in *Carson v. Dynegy*, where the plaintiff claimed conversion under Texas law based on his ex-employer's use of a computer program he developed while working there.  344 F.3d 446, 449 (5th Cir. 2003).  The Court held that conversion, which demands proof of wrongful control over another's property, includes elements "qualitatively different" from copyright infringement, precluding preemption. *Id.* at 456-57.  Likewise, in *Computer Mgmt. Assist. Co. v. Robert F. DeCastro, Inc.*,

the plaintiff asserted a claim under the Louisiana Unfair Trade Practices Act against a licensee, its employee, and a competitor for collaborating in unauthorized use of its technology. 220 F.3d 396, 399 (5th Cir. 2000). The Court rejected preemption because the Louisiana law requires proof of an extra element not present in a Copyright Act claim: fraud, misrepresentation, or "other unethical conduct." *Id*. at 404-05. Preemption also failed in *Taquino* because the plaintiff's claim for breach of contract against a former licensee entailed, not just reproduction, but use of the copyrighted material in the defendant's promotional literature, in violation of the parties' agreement. *See* 893 F.3d at 1501 (affirming district court attached as appendix). Other circuit courts have reached similar results,[5] as have district courts in this circuit.[6]

---

[5] *See, e.g., MDY Indus., LLC v. Bizzard Ent., Inc*., 629 F.3d 928, 957 (9th Cir. 2010) (tortious interference claim not preempted where defendant's software enabled online game players to violate user agreements with gaming company); *Telecom Tech. Serv., Inc. v. Rolm Co*., 388 F.3d 820, 833 (11th Cir. 2004) (preemption denied: "The district court found, and we agree, that the tortious interference claim involves an additional element. The tortious interference claim requires Siemens to demonstrate that the ISOs violated the terms of Siemens's software license for third parties, which is an element beyond federal copyright law that prohibits unauthorized copying"); *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1305 (D.C. Cir. 2002) (no preemption where interference with contractual rights occurs "through conduct *other* than reproduction, preparation, distribution, performance, or display of the copyrighted work" (emphasis in original, cleaned up)); *but see Stromback v. New Line Cinema,* 384 F.3d 283, 306-07 (6th Cir. 2004) (tortious interference with contractual relations claim preempted); *Progressive Corp. v. Integon P&C Corp*., 947 F.2d 942 at * 6 (4th Cir. 1991) (table) (same).

[6] *Erosion Prevention Prod., LLC v. Pave/lock/plus II,* 2023 WL 9105685 at * 6 (S.D. Tex., Nov. 22, 2023) (no preemption of unjust enrichment claim); *Synergy Indus. LP v. Nat'l Oilwell Varco, LP*, 2019 WL 3325637 at ** 1-2 (S.D. Tex., March 26, 2019) (denying preemption of tortious interference with contractual relations claim); *Trevino v. MacSports, Inc*., 2009 WL 2411916 at * 2 (E.D. La. Aug. 5, 2009) (no preemption of unjust enrichment claim if it "arises out of an alleged contractual breach"); *MetroPCS Wireless, Inc. v. Virgin Mobile USA, LP,* 2009 WL

By contrast, preemption has been applied in cases where the plaintiff need not prove conduct by the defendant beyond reproduction.  Thus, the Court has applied preemption to bar Texas state law claims of unfair competition by misappropriation because that claim doesn't require proof of "improper means" or "'wrongful conduct beyond mere reproduction.'"  *Motion Med. Tech*., 875 F.3d at 775 (*quoting Globeranger*, 836 F.3d at 488).  Nor does it matter that the state claim entails showing that the plaintiff created a product "through extensive time, labor, skill, and money;" such proof is also inherent in proving creation of a copyrighted work.  *Alcatel*, 166 F.3d at 789; *see also Ultraflo*, 845 F.3d at 657-58 (unfair competition by misappropriation claim preempted).

*Daboub v. Gibbons* may be the paradigmatic case for preemption.  42 F.3d 285 (5th Cir. 1995).  In *Daboub*, members of a band called the Nightcaps sued the members of ZZ Top for stealing one of their songs and releasing a "musically and lyrically identical" version.  *See id.* at 287.  Because the Nightcaps ultimately had no complaint beyond ZZ Top's repurposing of their music, preemption applied:

---

3075205 at * 18 (N.D. Tex., Sept. 25, 2009) (tortious interference claim enforces rights different than copyright and not preempted); *XPEL Tech. Corp. v. Am. Filter Film Dist.,* 2008 WL 3540345 at ** 7-8 (W.D. Tex., Aug. 11, 2008) (denying preemption of breach of contract and tortious interference claims); *Optimum Return LLC v. CyberKatz Consult., Inc*., 2004 WL 827835 at * 5 (N.D. Tex., March 26, 2004) (tortious interference claim not preempted if it includes claim that defendant induced co-defendant to violate license and form new company); *but see Fed'n of State Massage Therapy Bds. v. Mendez Master Training Center, Inc*., 2018 WL 3862101 at * 6 (S.D. Tex., Aug. 14, 2018) (tortious interference claim preempted); *Davis v. Laroda*, 2008 WL 11349744 at * 3 (N.D. Tex., April 3, 2008) (same).

The Nightcaps' state law claims include conversion, misappropriation, plagiarism, a violation of the Texas Free Enterprise and Antitrust Act of 1983, disparagement, and defamation. The core of each of these state law theories of recovery in this case, without detailing the specific elements comprising each claim, is the same: the wrongful copying, distribution, and performance of the lyrics of *Thunderbird*.... The Nightcaps have failed to allege or produce evidence of any element, such as an invasion of personal rights or a breach of fiduciary duty, which render their claims different in kind from copyright infringement.

*Id*. at 289 (cleaned up).

> **2.    Ser-Ca's State Claims Require Proof of Extra Elements Beyond Mere Reproduction and Therefore Aren't Preempted**

The conduct at the center of Ser-Ca's claims for tortious interference with contract, misappropriation, and unjust enrichment is the Chavez companies' luring away of La Leyenda in 2015 and inducing it to break its exclusive recording contract with Serca Mexico – not simply the uploading of La Leyenda songs to online platforms.  Because that conduct goes beyond mere reproduction, and the Texas claims require proof of additional elements besides violating Ser-Ca's exclusive right to distribute the band's songs, preemption doesn't apply here.

In its counterclaims, Ser-Ca alleged that the Chavez brothers signed La Leyenda to a recording contract in 2015 despite Serca Mexico's exclusive contractual relationship with the band and the Chavez brothers' "full[] cognizan[ce] of the ongoing relationship and distribution agreements between" Ser-Ca and online distributors.  ROA.975-76.  The Chavez brothers allegedly knew

of Serca Mexico's contract with La Leyenda but, "to further their wrongful objectives, [they] portrayed SER-CA in a negative, adversarial light to La Leyenda" and thereby "interfered with SER-CA's contracts and agreements." ROA.982. This was done to "divert Ser-Ca's economic interests in La Leyenda" to the Chavez companies. *Id.* The same allegations underlie Ser-Ca's misappropriation claim and its unjust enrichment claim, which also alleges that the Chavez companies' actions constitute "deceptive and unfair practices to deceive Ser-Ca out of its rights in La Leyenda's sound recordings." ROA.983-84, 989.

Although Ser-Ca's counterclaims were rejected as a matter of law on the pleadings under Rule 12(c), the evidence Ser-Ca later presented at trial supports its position against preemption. Resendez testified that the Chavez brothers constantly tried to poach artists under contract with Serca Mexico and get them to ignore their legal duties by signing with the Chavez companies. ROA.4519. This repeatedly succeeded and eventually bore fruit with La Leyenda. In finding that Tierra Caliente violated the DMCA, the jury necessarily concluded that it acted knowingly – that is, that it knew Serca Mexico had the legally operative contract with La Leyenda and that the Chavez brothers were therefore interfering with it. 17 U.S.C. § 512(f); ROA.4156 ("the jury's verdict on the DMCA claim required a finding that Remex knew of the falsity of its counter-notifications"). Resendez testified that this injured Ser-Ca well beyond simply losing out on revenue

generated by purchases of the music improperly recorded on the Remex label; it damaged Ser-Ca more globally because other bands saw instability and began deserting.  ROA.4632-33, ROA.4635.  The Chavez companies' alleged and proven actions therefore go far beyond merely producing and selling music Ser-Ca had the superior right to commercialize.

Moreover, the torts Ser-Ca alleges all require a showing of additional conduct, such as willful and intentional interference with a contract; breaching a confidential relationship or using other improper means to acquire trade secrets; or cadging an undue benefit through fraud, duress, or taking undue advantage.[7]  And caselaw specifically makes clear that when a state law claim turns on inducing contractual breach, as here, preemption is inapplicable.  *Digital Drilling* involved unjust enrichment, which Ser-Ca alleges.  *See* 965 F.3d at 382.  The defendant was alleged to have committed that tort by taking undue advantage in causing the plaintiff's customers to breach their licenses.  *See id.*  *Globeranger* involved

---

[7]  *See Inwood Nat'l Bank v. Fagin*, 706 S.W.3d 342, 347 (Tex. 2025) ("The elements of a claim for tortious interference with an existing contract are (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) the willful and intentional interference caused damage; and (4) actual damage or loss occurred"); *Digital Drilling*, 965 F.3d at 379 ("Under Texas law an unjust enrichment claim requires showing that one party 'has obtained a benefit from another by fraud, duress, or the taking of an undue advantage'" (*quoting Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)); *Universal Print Serv., Inc. v. Dresser-Rand Grp.*, 571 S.W.3d 346, 360 (Tex. App. – Houston [1ˢᵗ Dist.] 2018) ("To establish misappropriation of trade secrets under Texas law, a plaintiff must show the existence of a trade secret that the defendant acquired through a breach of a confidential relationship or through other improper means and that the secret was used without authorization, resulting in damages to the plaintiff"); *Globeranger*, 836 F.3d at 485.

misappropriation, which Ser-Ca alleges.  *See* 836 F.3d at 488.  The plaintiff there alleged that the defendant persuaded its former employee to violate his contractual duty of nondisclosure; this was the "additional element… that the protected information was taken via improper means or breach of a confidential relationship."  *Id.*; *see also Taquino* (breach of contract claim not preempted). Exactly like these cases, Ser-Ca's state law claims allege that the Chavez companies did more than reproduce its copyrighted material – they convinced La Leyenda to breach its exclusive contract with Serca Mexico and thereby caused a variety of forms of harm to Ser-Ca, the assignee.  There is no federal preemption in these circumstances.

The inapplicability of preemption becomes even clearer when this case is compared to *Daboub*.  There, one band produced music and a second one copied it and profited from distributing the infringing version.  *See* 42 F.3d at 287.  The bands had no other connection and no third parties, contracts with other entities, or additional wrongful conduct like breaching a confidential relationship or taking undue advantage was involved.  Here too, if Tierra Caliente had simply posted La Leyenda's music recorded with Ser-Ca on the Remex-La Leyenda YouTube channel, diverting profit rightfully due to Ser-Ca, the required "extra element" might be lacking.  *See Digital Drilling*, 965 F.3d at 381-82 ("Had Digidrill merely alleged that Petrolink obtained a benefit at Digidrill's expense by engaging in

unauthorized copying," preemption might apply).  But the Chavez companies did much more: they stole a band contracted to Serca Mexico, effectively nixed Serca Mexico's (and therefore Ser-Ca's) agreement and relationship with that band, acquired Ser-Ca's assigned rights through the improper means of masterminding a third party's contractual breach, and obtained the undue advantage of a new economic relationship it had no business creating and profiting from.  This conduct implicates rights and interests relating to commercial relations that extend well beyond copyright and which enjoy protection under Texas state law.  As in *Digital Drilling*, *Globeranger*, and other cases, preemption is therefore unwarranted.

Ser-Ca should have been permitted to pursue its state law claims against the Chavez companies for tortious interference, misappropriation, and unjust enrichment in the district court.  This Court should therefore reverse the portion of the judgment dismissing them and remand these claims for trial.

## II.    The District Court Abused its Discretion in Refusing to Grant the Attorneys' Fees Ser-Ca Requested

The district court abused its discretion in failing to grant the court-ordered attorneys' fees Ser-Ca sought after trial.  Precedent is clear that granting such fees to the prevailing party is the rule in copyright and DMCA cases, not the exception, and this is not the unusual case warranting denial of Ser-Ca's application.

## A.     The Standard of Review is Abuse of Discretion

"This court reviews fee awards under the deferential abuse of discretion standard.  A trial court abuses its discretion in awarding or refusing to award attorney's fees when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence."  *Keck v. Mix Creative Learning Ctr., LLC*, 116 F.4th 448, 457 (5th Cir. 2024) (*quoting Virgin Records Am. v. Thompson*, 512 F.3d 724, 725 (5th Cir.), *cert. denied*, 553 U.S. 1019 (2008)).  More generally, arbitrary and "clearly unreasonable" rulings are abuses of discretion.  *Banco Mercantil de Norte, S.A. v. Paramo*, 114 F.4th 757, 760 (5th Cir. 2024) (quotation omitted).

## B.     The Court's Rejection of Attorneys' Fees for Ser-Ca Was an Abuse of Discretion

### 1.     Standards for Granting Fees Under the DMCA and Copyright Act

Ser-Ca prevailed both by defeating the Chavez companies' claim against it under the DMCA via summary judgment and by succeeding at trial on its own DMCA claim against those entities for knowingly misrepresenting their rights to YouTube.  Attorneys' fees expended in achieving both of these results are recoverable under 17 U.S.C. §§ 505 and 512(f).  *See Digital Drilling*, 965 F.3d at 385; *Kirtsaeng v. John Wiley & Sons*, 579 U.S. 197, 202 (2016).

There are "several nonexclusive factors," first enunciated in *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n. 19 (1994), for courts to consider in deciding on fees under the Copyright Act: "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Batiste v. Lewis,* 976 F.3d 493, 507 (5th Cir. 2020) (cleaned up, *quoting Fogerty*); *Digital Drilling*, 965 F.3d at 385. The objective reasonableness of the losing party's position, in particular, deserves substantial weight in the calculus. *See id*., *Kirtsaeng*, 579 U.S. at 205-08. A court may also award fees to "deter repeated instances of copyright infringement or overaggressive assertions of copyright claims… even if the losing position was reasonable in a particular case." *Kirtsaeng,* 579 U.S. at 209.

Although fees should not be "awarded to prevailing parties as a matter of course, [the Court has] repeatedly stated that 'an award of attorney's fees to the prevailing party in a copyright action is the rule rather than the exception and should be awarded routinely.'" *Digital Drilling*, 965 F.3d at 386 (*quoting Virgin Records,* 512 F.3d at 726); *Hunn v. Dan Wilson Homes, Inc*., 789 F.3d 573, 588-89 (5th Cir.), *cert. denied*, 577 U.S. 1031 (2015); *Engel v. Teleprompter Corp*., 732 F.2d 1238, 1241 (5th Cir. 1984) ("Where a statute or contractual provision authorizes a fee award, such an award becomes the rule rather than the exception, and should be awarded routinely as are costs of suit").

## 2.     The Court Abused its Discretion Here

Several errors led the district court to mistakenly treat this case as an exceptional one where the prevailing party's request for fees should be rejected. This Court should now reverse that decision.

Initially, the district court conflated compensatory damages under the DMCA, 17 U.S.C. § 512(f), with attorneys' fees awarded afterwards to the prevailing party by the court.  At the charge conference, the court described attorneys' fees as the only permissible measure of damages under the facts of this case:

> I mean, it's not an easy case, and the charge isn't easy.  And frankly, I was sort of scratching my head, why isn't it a damage question on the DMCA.
>
> But after looking at it, and looking at it, and looking up cases, we didn't see that there was one needed in this case, that you – your attorneys' fees are going to your damages on that claim, and you're going to get your lost profits on the Lanham Act claim.

ROA.5566.  As a result, the attorneys' fees question put to the jury asked:

> What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff for the attorneys' fees it incurred, if any, as a result of YouTube replacing the content or ceasing to disable access to it?

ROA.3850.  The question makes clear that fees recoverable as compensatory damages were limited to those incurred to take down the songs and videos on

33

YouTube and excluded fees Ser-Ca incurred later, in this action, for litigating both parties' DMCA claims.[8]

After trial, Ser-Ca sought fees from the district court but the court declined to award any, finding that the Chavez companies' position about which party had the right to monetize La Leyenda's music before 2021 wasn't objectively unreasonable. ROA.4156. The court acknowledged that "the jury's verdict on the DMCA claim required a finding that Remex knew of the falsity of its counter-notifications," and that consequently "Defendants' good-faith and equitable arguments lose some of their force." ROA.4156. Nevertheless, the court concluded that the Chavez companies' arguments "retain[ed] validity" because the parties litigated their competing rights "extensively before its resolution by motion." ROA.4157. In the court's view, these arguments weren't "frivolous or improperly motivated" and didn't "beg for compensation or deterrence," though the court didn't explain why. *Id*. The jury awarded $50,000 as damages for Ser-Ca's DMCA claim to compensate for fees Ser-Ca spent in dealing with YouTube – and the court conceded that "the balance of the relevant factors counsel[ed] in favor of awarding fees to Serca" for successfully prosecuting its DMCA claim –

---

[8]  The district court's question contrasted with Ser-Ca's broader proposed question, which asked: "What sum of money, if any, do you find from a preponderance of the evidence would be a reasonable attorney's fee for the services of Serca's attorneys in relation to the amount of time expended in this case?" ROA.3828.

but it rejected any further award post-trial because the $50,000 figure is within "the bounds of reasonableness." *Id.*

The district court's determination represents an abuse of discretion for several reasons. First, its decision that the Chavez companies' position retained validity and wasn't frivolous is inexplicable in light of the jury's finding. As the court noted, it may have found that Ser-Ca had the superior rights to distribute La Leyenda songs after reasonable legal arguments by both sides when it decided to defer to the Mexican judgments; that was the issue the parties litigated "extensively before its resolution by motion." ROA.4157. But the jury went much farther. In finding for Ser-Ca on its DMCA claim, as the court acknowledged, jurors necessarily decided that the Tierra Caliente made knowing, material misrepresentations. 17 U.S.C. § 512(f). That Tierra Caliente lied, in other words, all the way back in 2016-17 and thereafter, when claiming to have the copyright to La Leyenda's music.

There is no way to square the jury's finding of knowing misrepresentation in notices drafted under penalty of perjury in 2016-17 with the court's conclusion that the Chavez companies' position later, during the course of this litigation and well *after* these conscious misrepresentations, still somehow retained merit. This reflects a "clearly erroneous assessment of the evidence" and thus an abuse of discretion. *Keck*, 116 F.4th at 457. Factual assertions that are knowing fabrications

can hardly claim validity in litigation.  In general, misgauging the strength of the parties' positions and their good or bad faith constitutes abuse of discretion warranting reversal of fee decisions.  *See, e.g., Schexnayder v. Hartford Life and Acc. Ins. Co*., 600 F.3d 465, 472 (5th Cir. 2010) ("We find that the legal questions in this case are much closer than the district court credited, and that the district court therefore abused its discretion in assessing attorneys' fees against Hartford"); *United States v. Medica Rents Co., Ltd*., 2008 WL 3876307 at * 4 (5th Cir. Aug. 19, 2008) (district court abused discretion in finding claims under federal False Claims Act frivolous and in bad faith).

Second, the court paid lip service to but nowhere truly analyzed the factors under *Fogerty*.  That is, the court announced, without reasoning and in just a few sentences, that the Chavez companies' positions had merit and weren't frivolous.  But it failed to say why or offer, let alone expound on, any reasoning.  This makes the court's position impossible to weigh on appeal, even under the abuse of discretion standard.  *See, e.g., Topalian v. Ehrman,* 3 F.3d 931, 938 (5th Cir. 1993) (reversing fee award; given district court's lack of explanation, "we cannot adequately review that decision for an abuse of discretion"); *Sims v. Jefferson Downs Racing Ass'n, Inc*., 778 F.2d 1068, 1085 (5th Cir. 1985) (reversing fee award for lack of explanation from district court: "we are unable to review the court's actions for abuse of discretion based on the record before us…. . we simply

must be provided reasons for the figures selected to be able to review the award"). Put differently, the district court's explanation-less decision is tantamount to no meaningful consideration at all, and this Court has repeatedly held that failure to evaluate the factors enunciated in *Fogerty* is grounds for reversal.  *See Digidrill*, 965 F.3d at 386-87; *Galiano v. Harrah's Operating Co*., 416 F.3d 411, 423 (5th Cir. 2005); *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996) (reversing unduly low fee award in case under 42 U.S.C. § 1988 because district court "bypassed considering each of the [legally relevant] factors").

Third, fees should be awarded to address and deter "repeated instances of copyright infringement or overaggressive assertions of copyright claims" even if the losing party's litigation position is legally defensible.  *Kirtsaeng,* 579 U.S. at 209.  The Chavez companies made knowing misrepresentations on numerous occasions to multiple online platforms and persisted with their false factual position until the court's summary judgment.  After that, as the case proceeded, the Chavez companies denied the "knowing misrepresentation" element until the jury's verdict.  This persistent conduct – far more than a one-time lapse, and found by the jury to be consciously deceptive – justifies an award of fees.

Finally, the court's limited jury question on damages comes nowhere close to accounting for fees reasonably expended by Ser-Ca because it was limited to dealings with YouTube and excludes this subsequent lawsuit.  The court was

therefore wrong to conclude that the jury's $50,000 award is within "the bounds of reasonableness." ROA.4157. That sum isn't based on Ser-Ca's counsel's testimony or billing records and appears to have been plucked from thin air by the jury. Whatever its reasonableness as compensation for fees expended during the back and forth between Ser-Ca and the online platforms and Select-O-Hits in 2016 and 2017, no one could seriously claim that $50,000 adequately addresses the attorneys' fees for complex copyright litigation waged over six years.

This case began when Ser-Ca was sued in Texas state court and continued through removal, multiple rounds of dispositive motion and summary judgment briefing and argument, considerable discovery, trial, and post-trial motions. At trial, Ser-Ca's counsel testified that Ser-Ca paid $596,494.00 in attorneys' fees to defend against the Chavez companies' DMCA claim and prosecute its own. ROA.3855. The conclusion that $50,000 – awarded to compensate for work completed before the litigation even began – is an adequate substitute for court-ordered fees under § 512(f) for six years of hard-fought litigation is random and arbitrary and therefore an abuse of discretion. *See, e.g., Banco Mercantil*, 114 F.4th at 760 (arbitrariness establishes abuse of discretion); *Topalian,* 3 F.3d at 938 (reversing where "[t]he court reduced each of the total sums to be awarded each defendant, arriving at an apparently arbitrary figure" in fees); *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012) (court may not make arbitrary reduction in

fee); *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 52 (3d Cir. 1978) (court "may not reduce an award by a particular percentage or amount (albeit for justifiable reasons) in an arbitrary or indiscriminate fashion").

This Court should remand for a proper assessment of attorneys' fees expended for Ser-Ca's having prevailed on the Chavez companies' and its own DMCA claims. *See Digital Drilling*, 965 F.3d at 387.

### III.    The Court Should Order Entry of a Broader Declaratory Judgment and a Broader Permanent Injunction

Ser-Ca requested a broader declaratory judgment and permanent injunction than that granted by the district court. Specifically, the district court refused to declare that the Chavez companies lack copyright to the songs and videos at issue, that any such copyright registrations are void, and that the 2015 contract between the Chavez brothers and la Leyenda is void.[9] Ser-Ca also sought a permanent injunction barring the Chavez companies from "accepting payments from third parties for the exploitation or administration of the Songs and Videos." ROA.3856. The district court's permanent injunction states only: "Judgment is

---

[9]    Ser-Ca's requested judgment would have declared that Ser-Ca "(1)…has the exclusive rights to the Songs and Videos, (2)… that Remex and Midas have no copyright ownership or administration rights to any of the Songs and Videos; (3)… that any copyright registrations by Remex and Midas of the Songs and Videos are invalid; and (4)… that any contract entered into by Remex and Midas pertaining to the Songs and Videos are null and void." ROA.3854-55. Instead, the district court's final judgment states only that "Judgment is entered in favor of Serca on its request for a declaration that Serca had and now holds exclusive rights to the U.S. distribution and digital transmission of the song and video recordings made the subject of this lawsuit." ROA.4161.

entered in favor of Serca on its request for a permanent injunction against Plaintiffs'/Counter-Defendants' continued use of these rights" – that is, "rights to the U.S. distribution and digital transmission of the song and video recordings made the subject of this lawsuit." ROA.4161-62.

The district court erred by entering these more limited forms of relief because they fail to fully protect Ser-Ca or accord with undisputed evidence admitted at trial.

### A.    The Standard of Review is De Novo

"A determination of whether to grant declaratory relief is within the district court's discretion, and a decision to deny declaratory relief is thus reviewed only for abuse of that discretion." *Environment Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523 (5th Cir. 2016); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995). In this case, however, the district court granted a declaratory judgment, and Ser-Ca only disputes its scope and that of the parallel permanent injunction. That question is reviewed de novo. *See Texas v. United States*, 126 F.4th 392, 405 (5th Cir. 2025) ("Although we review an injunction for abuse of discretion, we review its scope *de novo*"); *Texas v. Becerra*, 89 F.4th 529, 537 (5th Cir.) (same), *cert. denied*, 145 S. Ct. 139 (2024).[10]

---

[10]    Older caselaw had indicated that the scope of an injunction is reviewed for abuse of discretion, *see, e.g., E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 470 (5th Cir. 2013); *Rolex Watch USA v. Meese*, 158 F.3d 816, 823 (5th Cir. 1998), *cert. denied*, 526 U.S. 1133

**B.    The District Court Erred in Refusing to Broaden the Declaratory Judgment and Permanent Injunction as Ser-Ca Requested**

The district court should have entered the declaratory judgment and permanent injunction requested by Ser-Ca in order to fully protect its rights to the songs and videos at issue and match the evidence admitted at trial.

"[T]he two principal criteria guiding the decision of whether to render a declaratory judgment are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Environment Tex. Citizen Lobby,* 824 F.3d at 523 (cleaned up) (*quoting Concise Oil & Gas P'ship v. Louisiana Intrastate Gas Corp*. 986 F.2d 1463, 1471 (5th Cir. 1993)).  Similarly, the scope of injunctive relief is "dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).  "[I]njunctions should be crafted to provide complete relief to the plaintiffs." *Mock v. Garland,* 75 F.4th 563, 587 (5th Cir. 2023) (*quoting Califano*, 442 U.S. at 702); *Texas*, 126 F.4th at 420 ("Remedies must be 'tailored to redress' a

---

(1999), but the more recent authority cited above applies de novo review.  In any event, reversal would also be warranted under the abuse of discretion standard.  An abuse of discretion occurs when the district court relies on clearly erroneous factual findings or misapplies relevant factual or legal conclusions. *See Ball v. LeBlanc*, 792 F.3d 584, 598 (5th Cir. 2015) (cleaned up).  As discussed *infra*, the district court's ignoring of the Chavez companies' admissions on copyright and the invalidity of the 2015 contract with La Leyenda, along with its legally mistaken focus on Serca Mexico's non-party status, meets this test.

plaintiff's injury," *quoting Gill v. Whitford*, 585 U.S. 48, 73 (2018)). Permanent injunctions protecting copyrights, trademarks, and related contractual rights are common. *See, e.g., Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 272-73 (5th Cir. 2014); *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 628 (5th Cir.), *cert. denied*, 571 U.S. 940 (2013) .

Here, the district court erred when it declined to declare that the Chavez companies lack copyright to the songs and videos and that any such copyright registrations are void. Tierra Caliente and Midas directly admitted that Midas is not the copyright owner of any of the songs at issue. ROA.5248-49, ROA.3369, ROA.3375. This contradicted their earlier claim of copyright and/or control to YouTube in counter-notifications and in their amended complaint. Pl. Exh. 25; ROA.170-71 (Chavez brothers enjoy "sole and exclusive rights to utilize and control [band's forthcoming] works"). In addition, Resendez testified at trial that the infringing music and videos remained available on Remex's online channels up to the present, though the Chavez brothers claimed to have taken them down. ROA.4574-76, ROA.4694-96. And even after the Mexican judgment in 2017 confirming the La Leyenda/Serca Mexico contract, the Chavez brothers "continued to maintain that Remex and Midas were the owners of the sound recordings." ROA.4942. In ruling on the parties' post-trial motions, the district court recognized that it "ha[d] declared Serca's exclusivity of certain rights of copyright

to the subject media," and that it should enjoin "Defendants' exercise of the same [copy]rights." ROA.4154. It follows that this should be memorialized in the declaratory judgment.

The same is true concerning the other facet of the declaratory judgment requested by Ser-Ca but denied by the district court: a statement that the 2015 contract between the Chavez brothers and La Leyenda is void. The district court correctly gave effect to the Mexican courts' judgments and held as a matter of law that Ser-Ca's contractual right to commercialize La Leyenda's music lasted until 2021. ROA.2029. Because the parties' agreement expressly and indisputably granted *exclusive* rights, ROA.2005, it necessarily renders any later, competing contract void. The district court therefore should have declared that fact in order to fully protect Ser-Ca from any continued or future interference with its contractual rights by the Chavez companies, as occurred in the past. In both respects – copyright and the illegal 2015 contract – the declaratory judgment Ser-Ca requested would plainly "clarify[] and settl[e] the legal relations in issue" between these parties and La Leyenda as well as relieve "the uncertainty, insecurity, and controversy giving rise to the proceeding." *Environment Tex. Citizen Lobby,* 824 F.3d at 523.

The district court rejected Ser-Ca's request for a broader declaration because it thought it was "not allow[ed] to declare broader rights of copyright and

contract not assigned to Plaintiff by Serca Mexico, who is not a party to this case."
ROA.3579, ROA.4153. But Serca Mexico's status as a non-party is immaterial.
The requested declaratory judgment would clarify the scope of the Chavez
companies' rights, not Serca Mexico's. The declaratory judgment may not concern
or bind Serca Mexico, *see Doe v. Lee*, 102 F.4th 330, 342 (6th Cir. 2024)
(Declaratory Judgment Act "does not modify the constitutional standards of
jurisdiction and standing and would therefore only bind the parties to this action"),
but it rightfully constrains the litigants who previously and wrongfully asserted the
validity of their copyright and contractual rights. And there is no dispute that that
conduct by the Chavez companies affected the opposing party in the case, Ser-Ca,
because Ser-Ca is Serca Mexico's assignee. Serca Mexico's position as a third
party is therefore no basis to deny the broader declaratory relief Ser-Ca requested.

Concerning the requested permanent injunction, Ser-Ca asked that the
district court enjoin Remex and Midas from "accepting payments from third parties
for the exploitation or administration of the Songs and Videos," ROA.3856, but the
injunction only forbids the Chavez companies' "continued use" of rights to "the
U.S. distribution and digital transmission of the song and video recordings made
the subject of this lawsuit." ROA.4161-62. That is, it does not expressly forbid
third parties from uploading La Leyenda music. At trial, however, German Chavez
acknowledged in testimony that this had occurred. ROA.5009, 5016-17 (referring

to income from videos uploaded by "fans").  Consequently, the injunction issued by the district court fails to provide complete and necessary relief to Ser-Ca or fully address its injury.  See *Mock; Texas; Califano, supra.*

The evidence admitted at trial warrants the broader equitable relief Ser-Ca requested below.  This Court should therefore remand for entry of the declaratory judgment and permanent injunction Ser-Ca sought in its motion for entry of judgment.

## Conclusion

This Court should (i) reverse the portion of the district court's judgment dismissing Ser-Ca's claims against the Chavez companies for tortious interference with contractual relations, misappropriation, and unjust enrichment and remand those claims for trial; (ii) reverse the portion of the district court's judgment denying Ser-Ca's request for attorneys' fees and remand for consideration of Ser-Ca's fee application according to the proper legal factual and standards; and (iii) reverse the portion of the district court's judgment denying Ser-Ca's requested declaratory judgment and permanent injunction, vacate the existing declaratory judgment and permanent injunction, and remand for entry of Ser-Ca's requested declaratory judgment and permanent injunction.

April 28, 2025                          Respectfully Submitted,


                                        s/ *Martin J. Siegel*
                                        Martin J. Siegel
                                        LAW OFFICES OF
                                            MARTIN J. SIEGEL, P.C.
                                        2222 Dunstan Road
                                        Houston, Texas 77005
                                        Telephone: (281) 772-4568
                                        Email: Martin@Siegelfirm.com

Yocel Alonso
ALONSO, PLLC
130 Industrial Blvd., Suite 110
P.O. BOX 45
Sugar Land, TX 77487
Telephone: (281) 240-1492
Email: Yocel@Alonsolaw.com

*Attorneys for*
*Defendant-Appellant/Cross-Appellee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day of April 28, 2025, the foregoing brief was

served on the following via the Court's ECF Filing system:

Ricardo Pumarejo
Pumarejo Law
1606 W. 42nd St.
Austin, TX 78756

Raymond L. Thomas
RAY THOMAS, PC
4900-B North 10th Street
McAllen, Texas 78504

*Counsel for Plaintiffs-Appellees/Cross-Appellants*

s/      *Martin J. Siegel*
Martin J. Siegel

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation of Fed. R. Civ. P. 32(a)(7)(B) because this brief contains 11,023 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief is printed in a proportionally spaced typeface using the Microsoft Word 2004 for Mac, Version 11.5.6, program in 14 point, Times New Roman font in body text and 12 point, Times New Roman font in footnote text.


s/_____*Martin J. Siegel*_____
Martin J. Siegel


Dated:  April 28, 2025