No. 24-40816

United States Court of Appeals
for the Fifth Circuit

―――――――――――――――――――――――――

TIERRA CALIENTE MUSIC GROUP, S.A. DE C.V., *doing business as* REMEX MUSIC; MIDAS MUSICAL, INCORPORATED,

*Plaintiffs—Appellees/Cross-Appellee*

v.

SER-CA DISCOS, INCORPORATED,

*Defendant—Appellant/Cross-Appellee.*

―――――――――――――――――――――――――

On Appeal from the United States District Court
for the Southern District of Texas

―――――――――――――――――――――――――

**PLAINTIFFS—APPELLEES/CROSS-APPELLANTS
TIERRA CALIENTE MUSIC GROUP, S.A. D/B/A REMEX MUSIC
AND MIDAS MUSICAL'S BRIEF**

―――――――――――――――――――――――――

Raymond L. Thomas
RAY THOMAS, PC
4900-B N. 10th St.
McAllen, TX 78504
p. 956.632.5053
rthomas@raythomaspc.com

Ricardo Pumarejo Jr.
PUMAREJO LAW
1606 W. 42nd St.
Austin, TX 78756
p. 512.731.7869
ricardo@pumarejolaw.com

*Counsel for Plaintiffs—Appellees/Cross-Appellants*

### CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed person and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Plaintiffs/Counter-Defendants/Appellees/Cross-Appellants, affiliated entities and persons, and counsel:

- Tierra Caliente Music Group, S.A. de C.V. d/b/a Remex Music
- Midas Musical, Inc.
- German Chavez (agent of Tierra Caliente & Midas Musical)
- Domingo Chavez (agent of Tierra Caliente & Midas Musical)
- Attorney Raymond L. Thomas of Ray Thomas, PC
- Attorney Olegario Garcia of Ray Thomas, PC
- Attorney David Sanchez of Sanchez Medina, PLLC
- Attorney Ricardo Pumarejo Jr. of Pumarejo Law

Defendant/Counter-Plaintiff/Appellant/Cross-Appellee, affiliated entities and persons, and counsel:

- Ser-Ca Discos, Inc.
- Discos y Cintas Serca, S.A. de C.V.
- Promociones Care, S.R.L. de C.V.
- Servando Angel Cano Resendez (agent of Ser-Ca Discos)
- Attorney Adrian Rafael Martinez of Resnick & Louis, PC
- Attorney Yocel Alonso of Alonso PLLC
- Attorney Martin Siegel of Law Offices of Martin J. Siegel, PC

/s/ *Ricardo Pumarejo Jr.*

Ricardo Pumarejo Jr.
*Counsel of Record for Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument should not be granted because (1) the issues raised have been authoritatively decided; and/or (2) the facts and legal arguments are adequately presented in the briefs and record, such that the decisional process would not be significantly aided by oral argument. *See* FED. R. APP. P. 34(a)(2). Appellant's central argument on appeal concerns whether the district court erred in granting a Rule 12(c) motion to dismiss certain state-law claims on the basis of federal preemption. But in arguing this point, Appellant (1) ignores the fact that it only offered a two-sentence response to the request for Rule 12(c) dismissal, thus leading the district court to conclude that Appellant failed to carry its burden of showing how its state claims were not preempted; (2) strangely focuses on what the trial evidence showed rather than what was alleged within the four corners of the operative complaint; and (3) fails to explain how the alleged error was harmful in light of other dispositive rulings the district court made against Appellant, but that Appellant does not challenge on appeal.

As for Counter-Appellants' issues on appeal, they concern straightforward legal sufficiency challenges (1) that will not necessitate a lengthy review of the record to resolve; and (2) that do not touch upon any legal issue that has not been authoritatively decided.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................................ 2

STATEMENT REGARDING ORAL ARGUMENT .................................................... 3

TABLE OF AUTHORITIES ................................................................................ 5

STATEMENT OF ISSUES PRESENTED .................................................................. 8

STATEMENT OF THE CASE .............................................................................. 9

    I.    Origins of the Dispute and Initial Filings ......................................... 9

    II.   Summary Judgment Rulings and Clarification of Rights ............... 11

    III.  Trial Proceedings and Final Judgment ........................................... 21

SUMMARY OF THE ARGUMENT ...................................................................... 25

ARGUMENT ................................................................................................. 27

    I.    The district court did not err in its Rule 12(c) dismissal of
       Serca's state-law claims for tortious interference,
       misappropriation, and unjust enrichment. But even if it did,
       any error would be harmless. .......................................................... 27

    II.   The district court did not abuse its discretion in denying
       Serca's requested attorney fees. ..................................................... 34

    III.  The district court did not abuse its discretion in refusing to
       afford Serca greater declaratory relief. ......................................... 50

    IV.  The district court did not abuse its discretion in refusing to
       afford Serca greater injunctive relief. ........................................... 56

    V.   The district court erred in denying all relief sought in
       Remex's renewed JMOL motion—for there was legally
       insufficient evidence to support the jury's DMCA findings. .......... 58

CONCLUSION ............................................................................................... 69

CERTIFICATE OF SERVICE .............................................................................. 71

CERTIFICATE OF COMPLIANCE ...................................................................... 72

# TABLE OF AUTHORITIES

## Cases

*Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491 (5th Cir. 2012) ................................................................................. 35

*Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435 (5th Cir. 2015) ........................................................................... 30

*Creations Unlimited, Inc. v. McCain*, 112 F.3d 814 (5th Cir. 1997) ............................................................................. 35

*Cullum v. Diamond A Hunting, Inc.*, 484 Fed. Appx. 1000 (5th Cir. 2012).......................................................................... 35

*Digital Drilling Data Sys., LLC v. Petrolink Servs., Inc.*, 965 F.3d 365 (5th Cir. 2020) ................................................... 30

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507 (5th Cir. 2016) ................................................ 51

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ............................ 35

*Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033 (9th Cir. 2018) ........................................................................... 43

*Holland v. Wal-Mart Stores Inc.*, 1 S.W.3d 91 (Tex. 1999) ....................... 33

*Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039 (7th Cir. 1999) .............................................................................. 29

*Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197 (2016) ....... 35, 37-39, 46

*La. Contractors Licensing Serv. v. Am. Contractors Exam Servs.*, 594 F. Appx. 243 (5th Cir. 2015)....................................... 35

*Macro Niche Software, Inc. v. Imaging Solutions of Australia*, 603 Fed. Appx. 351 (5th Cir. 2015)...................................... 35, 43

*Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998) ................................................................... 50

*McArdle v. Mattel Inc.*, 456 F. Supp. 2d 769 (E.D. Tex. 2006) ............................................................................... 32

*Miller v. Travis Cnty., Tex.*, 953 F.3d 817 (5th Cir. 2020).......................... 58

*M-I LLC v. Stelly*, 733 F. Supp. 2d 759 (S.D. Tex. 2010) ........................... 32

*Noeller v. Wojdylo*, 922 F.3d 797 (7th Cir. 2019) ....................................... 12

*Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394
F.3d 357 (5th Cir. 2004) ......................................................... 35, 43

*Ramsey v. Sheet Pile, LLC*, 130 F.4th 193 (5th Cir. 2025) ......................... 57

*Rolex Watch USA, Inc. v. BeckerTime, LLC*, 96 F.4th 715,
720 (5th 2024).......................................................................... 56

*Sahuc v. Tucker*, 166 F. Appx. 157 (5th Cir. 2006)................................... 35

*Sultana Ent., LLC v. Gutierrez*, 740 Fed. Appx. 81 (5th Cir.
2018) ...................................................................................... 13

*U.S. v. Fowlie*, 22 F.3d 1059 (9th Cir. 1994) ............................................ 12

*U.S. v. M/Y Galactica Star*, 13 F.4th 448 (5th Cir. 2021) ..................... 50, 53

*Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652 (5th
Cir. 2017) ................................................................................ 31

*Vertex Servs., LLC v. Oceanwide Houston, Inc.*, 583 S.W.3d
841 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ................................... 31

*Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724 (5th
Cir. 2008) ...................................................................... 35, 41, 43

*Womack+Hampton Architects, LLC v. Metric Holdings Ltd.
P'ship*, 102 F. Appx. 374 (5th Cir. 2004)......................................... 35, 46

*Eleven Line, Inc. v. N. Tex. State Soccer Ass'n, Inc.*, 213
F.3d 198 (5th Cir. 2000) ............................................................... 68

*Keener v. Sizzler Family Steak Houses*, 597 F.2d 453 (5th
Cir. 1979) ................................................................................ 68

*Shapiro v. Kelly*, No. 97-30183, 1998 WL 197793 (5th Cir.
Apr. 1, 1998) ............................................................................ 58

*Canadian Standards Ass'n v. P.S. Knight Co., Ltd.*, No. 1:20-CV-01160, 2025 WL 880254 (W.D. Tex. Mar. 12, 2025) ............................................................................ 37

*Spear Mktg., Inc. v. Bancorpsouth Bank*, No. 3:13-CV-03583, 2016 WL 193586 (N.D. Tex. Jan. 14, 2016), *aff'd*, 844 F.3d 464 (5th Cir. 2016) ........................................ 42

*CoreClarity, Inc. v. Gallup, Inc.*, No. 4:20-CV-00601, 2020 WL 6741962 (E.D. Tex. Nov. 17, 2020) ........................ 37

*Lenz v. Universal Music Corp.*, No. 5:07-CV-0383, at 2010 WL 702466 (N.D. Cal. Feb. 25, 2010) .......................... 65

*Perez v. Pinnacle Clinical Research, PLLC*, No. 5:20-CV-00112, 2020 WL 13120612 (W.D. Tex. June 5, 2020) ............... 50

*Johnson v. New Destiny Christian Ctr. Church, Inc.*, No. 6:15-CV-01698, 2017 WL 1093446 (M.D. Fla. Mar. 23, 2017) ............................................................................ 65

*Berg v. M&F W. Prods., Inc.*, No. 6:19-CV-00418, 2021 WL 2646223 (E.D. Tex. June 28, 2021) ........................ 41

**Statutes & Rules**

17 U.S.C. § 1203 ............................................................ 34

17 U.S.C. § 505 .............................................................. 34

17 U.S.C. § 512 .............................................................. 49

28 U.S.C. § 2111 ............................................................ 32

Fed. R. App. P. 28 ......................................................... 30

**Secondary Sources**

29A Am. Jur. 2d Evidence § 1314 ................................. 63

Federal Trial Handbook: Civil § 30:1, Westlaw (2024-2025 Edition) ........................................................ 62-63

## STATEMENT OF ISSUES PRESENTED

Issue 1:  Did the district court err in granting a Rule 12(c) dismissal of Serca's state claims for tortious interference, misappropriation, and unjust enrichment on the basis of preemption under the Copyright Act? To the extent there was any error, is that error harmless since Serca is incapable of showing that it could have obtained any greater relief at trial had the dismissed claims gone to the jury?

Issue 2:  Did the district court abuse its discretion in denying Serca's request for additional attorney fees when the record reflects that the district court engaged in a thoughtful application of the *Fogerty* factors?

Issue 3:  Did the district court abuse its discretion in denying Serca's request for additional declaratory relief that was unnecessary to the resolution of the issues at controversy?

Issue 4:  Did the district court abuse its discretion in denying Serca's request for additional injunctive relief for the purpose of addressing a speculative and nebulous harm?

Issue 5:  Did the trial court err in denying Remex's renewed JMOL motion challenging the jury's DMCA findings, which were not supported by legally sufficient evidence?

## STATEMENT OF THE CASE

## I.    Origins of the Dispute and Initial Filings

The underlying lawsuit commenced in May 2018 when Tierra Caliente Music Group, S.A. de C.V. d/b/a Remex Music ("Remex") and Midas Musical, Inc. ("Midas") sued Ser-ca Discos, Inc. ("Serca") in a Texas state court. ROA.36. The following factual allegations and claims were set forth in Remex and Midas' state court pleading:

- Through their agents, music producers German and Domingo Chavez ("the Chavezes"), Remex and Midas entered a contract in 2015 with Eliseo Robles ("Robles"), who is the frontman for a Mexican music group called "La Leyenda."

- Under the contract ("the Chavez Contract"), La Leyenda agreed to record a certain number of songs, albums, and videos for Remex and Midas, who would produce and distribute that content.

- In accordance with the Chavez Contract, Remex and Midas produced a number of songs and music videos for La Leyenda (collectively "the subject media"), which Remex then uploaded to various streaming platforms (e.g., iTunes, Spotify, and YouTube).

- Pursuant to the Digital Millennium Copyright Act ("DMCA"), Serca thereafter began sending takedown notices to all streaming

platforms that were sharing the subject media. Serca claimed that it had a copyright in the subject media.

- The takedown notices resulted in periods in which the subject media was taken down. Further, Serca's repeated accusations of infringement risked Remex having its streaming-platform accounts terminated, which would jeopardize Remex and Midas' ability to distribute and monetize content for La Leyenda and several other recording artists.

- Based on Serca's above-described actions, Remex and Midas brought claims against it for tortious interference and violation of the Texas Theft Liability Act.

ROA.36-41. Serca responded by removing the suit to federal court, asserting that the Copyright Act preempted the state-law claims. ROA.28.

While in federal court, Remex and Midas amended their complaint to solely bring a DMCA claim against Serca. ROA.170. As for Serca, it filed a counterclaim wherein it alleged the following:

- Discos y Cintas Serca, S.A. de C.V. ("Serca-Mexico") entered a recording contract with La Leyenda in February 2012 ("the Serca-Mexico Contract"). Through that contract, La Leyenda gave

Serca-Mexico and it assignees rights in La Leyenda's recordings and name.

- Serca-Mexico thereafter assigned to Serca the exclusive right to distribute, commercialize, and sell La Leyenda's sound recordings in the United States. On the basis of the Serca-Mexico Contract and its assignment, Serca asserted that it had the exclusive right to distribute and monetize La Leyenda's music—including the subject media—in the United States. Serca also complained of Remex's DMCA counter-notifications, which resulted in service providers restoring the subject media after it had been removed in response to Serca's takedown notices.

- On the basis of the above allegations, Serca asserted (1) an unfair competition claim under the Lanham Act; (2) a declaratory action; (3) violation of the DMCA; and (4) common-law claims of unfair competition, unjust enrichment, misappropriation, trademark infringement, and tortious interference.

ROA.78-89, 232-42.

## II.    Summary Judgment Rulings and Clarification of Rights

In January 2019, Serca filed a motion for partial summary judgment attacking Remex and Midas' DMCA claim. ROA.339. In that motion, Serca

asserted (1) that a Mexico court's "Amparo Judgment" addressed disputes between Serca-Mexico and La Leyenda in connection with the Serca-Mexico Contract; and (2) that the Amparo Judgment—upon being given conclusive effect under principles of international comity—necessitated the district court finding that Serca-Mexico and its assignees (i.e., Serca) have ownership interests in the subject media (i.e., the songs and videos that Remex and Midas produced for La Leyenda). *Id.* Upon considering the motion and the response to it, the district court found that the Amparo Judgment was not outcome determinative and denied the motion in its entirety.[1] ROA.496, 560.

In June 2021, Remex and Midas filed a motion that sought to dispose of Serca's counterclaims and request for lost profits through Rule 12(b)(1), Rule 12(b)(7), Rule 12(c), and/or summary judgment. ROA.966, 1165, 1866. Serca filed a response, wherein it renewed its prior request for summary judgment on the basis of new evidence attached to the response. ROA.1580. In January 2022, the district court ruled on the parties' competing requests for dispositive relief ("the Dispositive Order"). In its order, the district court

---

[1] *See generally Noeller v. Wojdylo*, 922 F.3d 797, 801 (7th Cir. 2019) ("An *amparo* proceeding is a criminal protection lawsuit somewhat similar to *habeas corpus* and, *inter alia*, is the means to review and annul unconstitutional judicial decisions. It is a proceeding created under the Mexican Constitution to protect individuals against state abuses by empowering Mexican federal courts to review government action." (citations and internal quotation marks omitted)); *U.S. v. Fowlie*, 22 F.3d 1059, 1064 (9th Cir. 1994) ("'*Amparo*' is Spanish for 'protection.'").

recognized that the summary judgment evidence established, in part, the following:

- Prior to his death during the pendency of this litigation, Servando Cano Rodriguez ("Cano") owned and managed three entities: Serca-Mexico, a Mexican company and record label that signs music artists and records albums; Serca, a Texas company and record label; and Promociones Care S. de R.L. de C.V. ("Care"), a Mexican company that organizes performances for music artists in Mexico but does not record albums. ROA.1999. A fourth related entity—Sultana Entertainment, LLC ("Sultana")—organizes performances in the United States and is owned by Cano's son, Hector.[2] *Id.*

- Though La Leyenda never had a direct contractual relationship with Serca, Serca was always charged with distributing La Leyenda's recordings in the United States pursuant to (1) the contracts between Serca-Mexico and La Leyenda; and (2) an assignment between Serca-Mexico and Serca. ROA.2005-06. Serca distributed

---

[2] When La Leyenda executed the Serca-Mexico Contract, it also executed a contract with Care ("the Care Contract"). ROA.1999. When La Leyenda later began performing United States concerts under the direction of Remex and Midas, Sultana—as the alleged assignee of Care's contractual rights—sued La Leyenda in Harris County, Texas. That suit was ultimately dismissed based on the forum non conveniens doctrine, and this Court affirmed that dismissal. *See Sultana Ent., LLC v. Gutierrez*, 740 Fed. Appx. 81 (5th Cir. 2018).

La Leyenda's music through a third-party, Select-O-Hits, who in turn dealt with the service providers. ROA.2004-06.

- Prior to La Leyenda joining Remex and Midas, a dispute arose between Robles (La Leyenda's frontman) and Cano over the execution date of the Serca-Mexico Contract, which had a five-year term. ROA.1999-2000. Cano asserted that the contract was executed on February 15, *2012*, while Robles asserted that Cano had fraudulently altered the contract so as to conceal the fact that it was actually executed on February 15, *2010*. *Id*.

- Robles and Cano also had a dispute over royalties. Though La Leyenda had recorded several albums for Serca over the course of many years, and though La Leyenda was contractually entitled to receive royalties from money earned off its music, Serca had never paid La Leyenda a dime in royalties or provided the band with an accounting. ROA.2000. Cano maintained that no royalties were ever paid because Cano and his entities purportedly never earned a profit off of La Leyenda's music. *Id*.

- Unhappy with the fraudulent alteration of its contract, the nonpayment of royalties, and the lack of any accounting, La Leyenda—while believing that the Serca-Mexico Contract's

five-year term had expired—ended its relationship with Serca. ROA.2000.

- La Leyenda executed the Chavez Contract on August 17, 2015—a date outside the Serca-Mexico's Contract five-year term if executed on February 10, 2010, as Robles believed. ROA.2000. The Chavezes relied on Robles' representation that La Leyenda's contract with Serca had ended; consistent with this representation, the Chavez Contract contained a warranty and representation from Robles that "he has full rights and he is not prevented, either by contract or by law, from agreeing" to the terms of the contract. ROA.2001.

- Litigation ensued in Mexico, with La Leyenda on one side and Cano, Care, and/or Serca-Mexico on the other. ROA.2001. The Mexican courts determined (1) that the Serca-Mexico Contract had been altered and that its actual execution date was February 15, 2011 (not 2012 as Cano and Serca-Mexico alleged, nor 2010 as Robles believed); and (2) irrespective of said contract's five-year term, the contract remained in effect because La Leyenda had not recorded all

the albums it contractually agreed to record for Serca-Mexico, with two albums left owing.[3] ROA.2002-03.

- A Mexican court issued a judgment on September 4, 2017 ("the Mexican Judgment"), wherein it found that La Leyenda breached the Serca-Mexico Contract by recording an album for Remex *and* having Remex publicize a song from the subject media. ROA.2006. The Amparo Judgment would be issued ten months later on June 6, 2018. *Id.*

In the Dispositive Order, the district court determined that the Mexican Judgment—which had not previously been provided as an attachment to Serca's first MSJ—warranted granting Serca's renewed request for summary judgment on Remex and Midas' DMCA claim. The district court explained the judgment's perceived significance as follows:

> In determining that La Leyenda breached the third clause not only by recording the album produced by Remex, but in connection with Remex's publicizing of one of the recorded

---

[3] During the pendency of the underlying lawsuit, La Leyenda recorded two additional albums for Serca-Mexico, and a Mexico court then recognized that La Leyenda had fulfilled its contractual obligations to Serca-Mexico. ROA.2003. It would be shown at trial that Serca-Mexico's effort to secure these additional albums was motivated solely by spite rather than any genuine financial interest. Recognizing that La Leyenda could not record additional music with Remex and Midas until La Leyenda provided it with two additional items, Serca-Mexico dragged its feet in recording those albums and then never publicly released them once they were recorded. ROA.5368-70.

songs, the Mexican court accepted the premise that sound recordings to which Serca-Mexico had exclusive rights included recordings made by third parties. More basically, [Remex and Midas'] claimed rights to La Leyenda's master sound recordings were never La Leyenda's to give, since those rights had already been contracted away to Serca-Mexico. Serca-Mexico's exclusive rights to the La Leyenda/Remex master sound recordings, once established—as they were through the Serca-Mexico Contract and the Mexican court's finding of breach—did not exchange hands simply because the courts fashioned a particular remedy, or because the contract term expired. Serca, as Serca-Mexico's assignee of those rights, held and now holds the exclusive rights to those recordings, to include rights of U.S. distribution and digital transmission . . . .

> . . . .

> . . . [T]he September 2017 judgment enables the Court to now determine that principles of international comity require deference to the rulings of the Mexican courts. Along with other portions of the record, it also compels a finding that Serca, not [Remex and Midas], had exclusive rights to digitally transmit the subject media produced by Remex and uploaded to YouTube (as well as to Spotify and iTunes) by or through [Remex and Midas], such that Serca's takedown notices contained no knowing or material misrepresentations actionable under § 512(f) of the DMCA. Serca is entitled to summary judgment on [Remex and Midas'] DMCA claim against it.

ROA.2030, 2040 (citations omitted). The district court determined that the Mexican Judgment was outcome determinative even though (1) neither Remex nor Midas were litigants before the court that issued the Mexican Judgment; and (2) the Mexican Judgment only came after Serca had sent out

the takedown notices that gave rise to Remex and Midas' DMCA claim. ROA.2003-04, 2027-28.

The Dispositive Order also afforded relief to Remex and Midas. Specifically, the district court (1) found that Serca's live pleading failed to negate Remex and Midas' contention that Serca's common-law claims for tortious interference, misappropriation, and unjust enrichment were preempted—thus resulting in their dismissal under Rule 12(c); and (2) found that Serca was unable "to produce competent evidence to demonstrate its own lost profits"—thus resulting in a summary judgment on Serca's request for lost-profit damages. ROA.2021-24, 2031-36.

In response to Remex and Midas' motion requesting reconsideration of the Dispositive Order, the district court issued a follow-up order to clarify the *limited* rights that it viewed Serca as having ("the Clarification Order"). ROA.2378, 2448, 2483. The Clarification Order stated that, based on the evidence, Serca-Mexico's assignment of rights to Serca only gave Serca "rights of distribution (and therefore digital transmission) in the United States, *without more*." ROA.2489 (emphasis added). The Clarification Order went on to reject Serca's efforts to construe the Dispositive Order in more favorable terms, explaining:

> [T]he Court finds basis to clarify that Serca's rights, as assignee, are limited—and do not merely include—rights of U.S.

distribution (and therefore digital transmission, a form of distribution applicable to sound recordings. However, Serca's argument proceeds along a different vein, asking the Court to recognize the separateness of copyrights and their physical manifestations in the recordings themselves, and to find that Serca's copyright, if any, "entitles Serca to record and release the subject music, at its own expense, if it so chooses." However, the Court never found that Serca holds a copyright to La Leyenda's music; it recognized that "sound recordings" extended federal copyright protection are separate from "musical works" consisting of "the notes and lyrics of the song[s] as they appear on sheet music." A copyright to sound recordings, which are recorded musical works, gives the owner exclusive rights of distribution and digital transmission, which may be transferred by "assignment…, exclusive license, or any other conveyance"—precisely what happened in this case. *Because* of the separateness of La Leyenda's music and the recordings of that music, as produced and distributed by [Remex and Midas], Serca has no right to the music itself, and *cannot* independently record and release it. It can, however, distribute the subject recordings in the United States.

ROA.2490-91 (citations omitted; emphasis in original). Accordingly, the district court partially granted Remex and Midas' motion for reconsideration "to clarify that Serca is Serca-Mexico's assignee only with respect to the latter's rights of distribution and digital transmission in the United States[.]" ROA.2492.

In May 2023, all parties filed additional motions for summary judgment. ROA.2628, 3190. As already discussed, Remex and Midas had previously been granted summary judgment on Serca's request for lost profits.

Through their second MSJ, they asked the district court for summary judgment "on all other forms of actual damages that [Serca] may seek through its affirmative claims," with the exception of any attorney fees recoverable as actual damages. ROA.2628, 2651. As for Serca, it asked the district court to find (1) that Serca is entitled to an assortment of declarations under the Declaratory Judgment Act; and (2) that Remex and Midas are liable under Serca's claims for Lanham Act violations, common-law unfair competition, common-law trademark infringement, and violation of the DMCA. ROA.3190-91. In September 2023, the district court issued an order ("the Second Dispositive Order") that

- granted Remex and Midas' MSJ upon finding that Serca "lacks competent evidence of its own damages"—thus ruling that Serca "may not [later] seek damages apart from [Remex and Midas'] profits"; and

- denied Serca's MSJ except "insofar as [Serca] seeks a declaratory judgment that [Serca], as Serca-Mexico's assignee, had and has exclusive rights to the U.S. distribution and digital transmission of the subject media" (i.e., the district court was only willing to grant declaratory relief that matched the findings already articulated in the Dispositive Order and the Clarification Order). ROA.3576-85.

With respect to Serca's declaratory action, the district court observed that Serca was seeking declaratory relief that was not sufficiently related to the limited rights that Serca held as Serca-Mexico's assignee, stating:

> Contrary to [Serca's] insistence, the Court's finding [in the Dispositive Order] disposes of no more; that [Serca] had and retains exclusive rights to U.S. distribution and digital transmission of the subject media does not allow the Court to declare broader rights of copyright and contract not assigned to [Serca] by Serca-Mexico, who is not a party to this case.

ROA.3579. The district court thus rejected, for example, Serca's request for a declaration that the Chavez Contract was null and void. ROA.3578.

## III.    Trial Proceedings and Final Judgment

A jury trial commenced on January 22, 2024. ROA.4346. Serca rested at the start of the fifth day of trial. ROA.5332. Thereafter, Remex and Midas argued their motion for judgment as a matter of law. ROA.3736, 5333-42. During that argument, the district court agreed there was no evidence that Midas was liable to Serca for trademark infringement or violation of the DMCA; this resulted in a jury charge that was focused solely on Remex. ROA.3830-38, 3845-50, 5333-42. Remex and Midas also argued

- that the district court should grant judgment in favor of Remex on the DMCA claim "because (1) there is a complete absence of pleading or proof on an issue material to the claim and (2) there are

no controverted issues of fact on which reasonable persons could differ"; and

- that the district court should "find as a matter of law that [Serca] is not entitled to a recovery of fees made available to [it] under the DMCA" because Serca "presented no evidence from which a jury could intelligently ascertain the reasonable and necessary fees that [Serca] incurred as a direct result of any service provider's alleged reliance on a counter-notification."[4]

ROA.3737-40, 5338-41. The district court rejected these evidentiary challenges. ROA.5341-42.

Following a six-day trial, the jury returned a verdict. ROA.3830-38, 3845-50. The jury was asked to determine whether Remex was liable to Serca for (1) unfair competition by trademark infringement; and (2) violation of the DMCA. ROA.3845-50. The jury found that Remex was not liable for trademark infringement, but was liable for DMCA violations. *Id.* In connection therewith, the jury awarded Serca $50,000 as compensation for the attorney fees it purportedly incurred as a result of Remex getting YouTube to

---

[4] The jury charge directed the jury—upon finding Remex liable under the DMCA—to decide "[w]hat sum of money, if paid now in cash, would fairly and reasonably compensate [Serca] for the attorneys' fees it incurred, if any, as a result of YouTube replacing the content or ceasing to disable access to it?" ROA.3850.

restore content that had been removed due to Serca's takedown notices. ROA.3848-51.

The parties subsequently filed motions for judgment as a matter of law, with Serca also filing a motion for entry of judgment on the verdict. ROA.3852, 4071, 4083. The district court denied Remex and Midas' JMOL motion, which challenged the jury's liability and damages findings in relation to the DMCA. ROA.4149-52. The district court granted Serca's motion for judgment on the verdict and partially granted its JMOL motion "as to Serca's requests for a permanent injunction limited to the partial declaratory relief awarded, and for relief supplemental to the declaratory judgment in the form of [Remex and Midas'] admitted gross revenue from the use of Serca's rights[.]" ROA.4157. The district court thus went on to issue a final judgment that provided the following relief in favor of Serca:

> Judgment is entered in favor of [Serca] . . . on its counterclaim against [Remex and Midas] . . . for violation of § 512(f) of the [DMCA] . . . , for which Serca shall recover attorneys' fees in the amount of $50,000.00;

> Judgment is entered in favor of Serca on its request for a declaration that Serca had and now holds exclusive rights to the U.S. distribution and digital transmission of the song and video recordings made the subject of this lawsuit, for which Serca shall recover supplemental relief in the form of [Remex and Midas'] . . . admitted gross revenue from the use of these rights through the date of judgment; [and]

> Judgment is entered in favor of Serca on its request for a permanent injunction against [Remex and Midas'] continued use of these rights[.]

ROA.4161-62. Serca filed post-judgment motions that were denied.

ROA.4163, 4197. All parties then filed notices of appeal. ROA.4199, 4236.

## SUMMARY OF THE ARGUMENT

Serca's primary challenge involves the Rule 12(c) dismissal of some of its state-law claims on preemption grounds. But Serca failed to preserve this issue in the district court, offering only a two-sentence, conclusory response that left the preemption analysis entirely undeveloped. Having failed to meaningfully contest preemption when it mattered, Serca cannot now expand its arguments on appeal and seek reversal. In any event, the dismissed claims—rooted in the same facts as Serca's copyright assertions—were rightly deemed preempted, and Serca has made no effort to show that their dismissal impacted the final judgment in any meaningful way.

Serca's dissatisfaction with the fee award similarly warrants no relief. The record shows the district court conducted a thorough and balanced application of the *Fogerty* factors, which led it to rightly conclude that Remex and Midas' litigation posture was not frivolous, malicious, or objectively unreasonable. The fact that the jury ultimately sided against Remex on Serca's DMCA claim does not retroactively strip its position of good faith or legal plausibility—particularly when Serca itself failed to appreciate the relevance of the Mexican Judgment to the parties' competing DMCA claims.

Serca also challenges the scope of the declaratory and injunctive relief awarded. But the district court correctly cabined the relief to match the

evidence and procedural posture—namely, Serca's limited status as Serca-Mexico's U.S. distributor assignee. The district court correctly declined to adjudicate copyright ownership beyond Serca's limited interest, nullify contracts to which Serca was not a party, or enjoin speculative future conduct involving unknown third parties. This exercise of equitable discretion was well within the district court's authority and should not be disturbed on appeal.

Finally, and perhaps most critically, Remex has independently demonstrated that the jury's DMCA findings were unsupported by legally sufficient evidence. Serca failed to establish that YouTube took action in reliance on a false statement or that Serca incurred any fees resulting from such reliance—both of which were essential to liability and damages under § 512(f). The trial record offered, at most, speculative or equally-plausible inferences that could not lawfully sustain the jury's findings. The judgment should thus be affirmed in part and reversed in part by striking the jury's DMCA findings on liability and damages.

## ARGUMENT

### I.    The district court did not err in its Rule 12(c) dismissal of Serca's state-law claims for tortious interference, misappropriation, and unjust enrichment. But even if it did, any error would be harmless.

When it needed to defend its tortious interference, misappropriation, and unjust enrichment claims (collectively "the dismissed claims") from Remex and Midas' request for a Rule 12(c) dismissal, Serca's defense consisted of this two-sentence response:

> The counterclaims to which [Remex and Midas] refer have nothing to do with copyright infringement and everything to do with [Remex and Midas'] interference with [Serca's] contracts and unjust enrichment resulting therefrom. Of course, [Remex and Midas'] cited case [sic] does not support their argument and the law in the Fifth Circuit, as well as all other circuits, is directly to the contrary and stands for the proposition that there is no pre-emption under the present facts.

ROA.1634-35. Serca has now ballooned this two-sentence defense into twelve pages of appellate briefing, elevating it to the central issue on appeal. APPELLANT'S BRIEF at 19-30. Yet, Serca still manages to ignore so much in those twelve pages.

In the Dispositive Order, the district court addressed Remex and Midas' Rule 12(c) challenge and Serca's response to that challenge as follows:

> [Remex and Midas] first target Serca's counterclaims for tortious interference, misappropriation, and unjust enrichment on the grounds that these claims, as pleaded, are subject to federal

copyright preemption. Section 301 of the Copyright Act preempts state law claims that fall within the general scope of federal copyright law. Consistent with the text of the statute, the Fifth Circuit uses a two-part test to determine whether the Act preempts a state-law cause of action. First, a court must examine the claim to determine whether it falls within the subject matter of copyright as defined by 17 U.S.C. § 102. If so, the court turns to whether the claim protects rights that are equivalent to any of the exclusive rights within the general scope of copyright, as defined in 17 U.S.C. § 106. In other words, is state law protecting the same rights that the Copyright Act seeks to vindicate, or is it protecting against different types of interference? The court evaluates "equivalency" by applying the "extra element" test: if the state-law claim requires one or more qualitatively different elements, the claim is not preempted. ***The party arguing against preempting must show the presence of any element that renders different in kind its rights under state and federal law***.

Serca pleads tortious interference consisting of [Remex and Midas'] interference with Serca's existing contracts and prospective business arrangements with Select-O-Hits and others to distribute La Leyenda's master sound recordings, misappropriation of those recordings via their unlawful distribution, and unjust enrichment resulting therefrom, all of which concern sound recordings within the subject matter of copyright under § 102. In an effort to demonstrate the "equivalency" prong of the applicable test, [Remex and Midas] cite[] to authority recognizing Texas-law causes of action for tortious interference with existing contract and prospective business relations, unfair competition by misappropriation, and unjust enrichment to fall within this prong. In response, Serca argues that the targeted counterclaims "have nothing to do with copyright infringement and everything to do with [Remex and Midas'] interference with Serca's contracts and unjust enrichment resulting therefrom," ***without explaining how the***

*two are mutually exclusive*. Serca's only other effort to contest preemption consists of a string-cite of cases purporting to demonstrate that "there is no pre-emption under the present facts," *again without any accompanying explanation*, and overlooking that the cited authority largely supports [Remex and Midas'] position. As Serca's counterclaims for tortious interference, misappropriation, and unjust enrichment all seek to vindicate and preserve its alleged exclusive rights of distribution within the meaning of § 106, *and it fails to explain how these claims present any "extra element" that would otherwise defeat the equivalency test*, the Court finds that the claims are preempted and must be dismissed.

ROA.2023-24 (citations, brackets, and some internal quotation marks omitted; emphasis added).

As aptly recognized by former Chief Judge Richard Posner of the Seventh Circuit,

[o]ur system of justice is adversarial, and our [district court] judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response.

*Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). In the instant case, Serca's response to the request for Rule 12(c) dismissal effectively called on the district court to do Serca's "research and try to discover whether there might be something to say against [Remex and Midas'] reasoning." *Id*. Despite having a burden to do so, Serca never sought to "show

the presence of any element" that rendered different in kind its rights under the subject clams. *See Digital Drilling Data Sys., LLC v. Petrolink Servs., Inc.*, 965 F.3d 365, 377 (5th Cir. 2020). Nowhere in its two-sentence response did Serca point the district court to a paragraph in its complaint that would have purportedly negated a finding of preemption.

After twice commenting on the lack of meaningful argument in Serca's response, the district court expressly relied on that failure to support, in part, its determination that the dismissed claims were preempted. ROA.2024 ("As . . . [Serca] fails to explain how these claims present any 'extra element' that would otherwise defeat the equivalency test, the Court finds that the claims are preempted and must be dismissed."). Yet, Serca never addresses on appeal this justification for the district court's Rule 12(c) dismissal. APPELLANT'S BRIEF at 19-30. Having failed to do so, the Court should hold that Serca has waived its appellate challenge and affirm the Rule 12(c) dismissal.[5] *See* FED. R. APP. P. 28(a)(8)(A).

Intriguingly, Serca spends more time on appeal seeking to reverse the Rule 12(c) dismissal on the basis of what was shown at trial rather than what

---

[5] In responding to the request for Rule 12(c) dismissal, even Serca's citation to legal authority was abysmal. ROA.1635. Serca examined none of the cited opinions; provided no parentheticals for the cited opinions; and, with one exception, provided no pinpoint pages for the cited opinions.

was shown in its pleading. APPELLANT'S BRIEF at 27-28. But the Court obviously cannot evaluate the correctness of the district court's Rule 12(c) ruling based on trial evidence presented years after the fact—for a Rule 12(c) ruling must be predicated on the contents of the pleadings. *See Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015) ("In considering a motion for judgment on the pleadings under Rule 12(c), the court is generally limited to the contents of the pleadings, including attachments thereto." (internal quotation marks omitted)).

When focus is correctly placed on Serca's pleading, it is evident why the district court granted the Rule 12(c) dismissal. In setting out its misappropriation claim, Serca simply stated that "[t]he [complained of] acts of [Remex and Midas] . . . constitute misappropriation in violation of the laws of the State of Texas and proximately resulted in damages to [Serca]." ROA.984. The complaint did nothing to show the district court how the misappropriation claim was protecting against different types of interference than that offered by the Copyright Act.[6] As for the tortious interference claim, it was preempted because—as set forth in Serca's pleading—it arose from the

---

[6] *See generally Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 659 (5th Cir. 2017) ("The district court correctly held that the Copyright Act preempted Ultraflo's unfair competition claim.") *Vertex Servs., LLC v. Oceanwide Houston, Inc.*, 583 S.W.3d 841, 849 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (recognizing that claims for misappropriation and unfair competition are one in the same).

same nucleus of facts: that Remex and Midas distributed or licensed the subject media, thereby interfering with Serca's contractual and economic relations.[7] ROA.983 (pleading that damages for tortious interference are sought for Serca's "loss of control of the [subject media] in an amount to be adjudicated at trial"). Lastly, the unjust enrichment claim was preempted because—as set forth in Serca's pleading—it sought restitution of benefits that Remex and Midas allegedly obtained from exploiting the subject media.[8] ROA.989 ("This [unjust enrichment] count is asserted against [Remex and Midas] for the disgorgement and restitution of all income . . . and advantages obtained . . . by [Remex and Midas] arising from their wrongful conduct and exploitation of [Serca's] rights to La Leyenda's sound recordings and the [subject media.]").

Even if the district court erred in granting the Rule 12(c) dismissal (it did not), Serca has made no effort to show how that error affected its substantial rights. *See* 28 U.S.C. § 2111 ("On the hearing of any appeal . . . ,

---

[7] *See M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 790 (S.D. Tex. 2010) ("[Tortious interference claim] is preempted to the extent it is based on M-I losing prospective business that would otherwise flow from its exclusive use of tool drawings, designs, and other copyrightable material.").

[8] *See generally McArdle v. Mattel Inc.*, 456 F. Supp. 2d 769, 779 n.6 (E.D. Tex. 2006) ("Unjust enrichment and quantum meruit are equitable, quasi contractual claims that exist when there is no express agreement. The Copyright Act generally preempts both claims.").

the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."). The district court, after all, subsequently issued the Second Dispositive Order and ruled therein that Serca was not entitled to "seek damages apart from [Remex and Midas'] profits"—a ruling Serca does not challenge on appeal. ROA.3585. If the dismissed claims had still been in place at the time of the Second Dispositive Order, that order would have gutted Serca's ability to seek actual damages through said claims at the time of trial.[9]

The dismissed claims (had they gone to a jury) would also not have aided Serca in its quest for attorney fees—for there is no statute authorizing a recovery for those claims. *See Holland v. Wal-Mart Stores Inc.*, 1 S.W.3d 91, 95 (Tex. 1999) ("We have consistently held that a prevailing party cannot

---

[9] Remex and Midas' MSJ on damages shined a bright light on Serca's do-nothing, irrelevant existence. ROA.2628-51. At the inception of the underlying suit and up until his death, Servando Cano Rodriguez ("Cano") was the owner and president of Serca and Serca-Mexico. ROA.2629. Cano testified that his daughter Claudia and his son "Cano Jr."—referred to as "Resendez" in Serca's brief—were the ones who ran Serca and had knowledge of its finances. *Id*. At her deposition, Claudia testified that she knew nothing of Serca's finances and had no knowledge of any damages Serca sustained as a result of Remex and Midas' complained-of actions. ROA.2630-33. As for Cano Jr., he testified (1) that Serca has never had a contract with *any* recording artist; (2) that Serca has never recorded a song or managed a performance for Serca; (3) that Serca has no direct relationship within any service provider; (4) that he has never seen Serca's financial statements; (5) that he does not know who signs checks for Serca's business expenses; and (6) that he does not know where Serca has its bank account. ROA.2635-45. Cano thus appears to have created Serca for no other reason than to create job titles for his children.

recover attorney's fees from an opposing party unless permitted by statute or by contract between the parties."). Further, to the extent any of the dismissed claims could have been utilized as a basis for seeking profit disgorgement, that is of no matter since Serca was awarded profit disgorgement in the final judgment. ROA.4161-62.

The Court must also recognize that Remex and Midas sought summary judgment on the dismissal claims, but the district court expressly refrained from addressing those summary judgment arguments upon granting the Rule 12(c) dismissal. ROA.1181-80; ROA.2025 (n.29). The district court thus did not consider, for example, whether Remex and Midas were entitled to summary judgment on Serca's tortious interference claim based on Serca's inability to identify any actual or prospective relationship with which Remex and Midas allegedly interfered. ROA.1188. Accordingly, Serca cannot show harm from the Rule 12(c) dismissal without showing that the district court was precluded from granting summary judgment on the dismissal claims—but this is yet another point that Serca fails to address in its brief.

## II. The district court did not abuse its discretion in denying Serca's requested attorney fees.

Sections 505 and 1203(b)(5) of the Copyright Act give district courts discretion to award "reasonable" attorney fees to the "prevailing party" in cases brought under the Act. 17 U.S.C. § 505, 1203(b)(5). The following

"*Fogerty* factors" inform a district court's analysis of whether to award fees to a prevailing copyright party: frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994).

"[A] district court may not award attorney's fees as a matter of course; rather, a court must make a more particularized, case-by-case assessment." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (brackets and internal quotation marks omitted). "[W]hen a district court properly applies the factors set forth in *Fogerty*, there is generally not an abuse of discretion. *La. Contractors Licensing Serv. v. Am. Contractors Exam Servs.*, 594 F. Appx. 243, 244 (5th Cir. 2015). In fact, *every time* a district court has denied a prevailing copyright defendant's request for attorney fees based on a *Fogerty*-factor analysis, this Court has affirmed that ruling.[10]

---

[10] *See, e.g., Macro Niche Software, Inc. v. Imaging Solutions of Australia*, 603 Fed. Appx. 351, 352-54 (5th Cir. 2015) (affirming district court's *Fogerty*-based denial of fees to prevailing copyright party); *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 510 (5th Cir. 2012) (same); *Cullum v. Diamond A Hunting, Inc.*, 484 Fed. Appx. 1000, 1003 (5th Cir. 2012) (same); *Virgin Records Am.*, 512 F.3d at 726-27; *Sahuc v. Tucker*, 166 F. Appx. 157, 158 (5th Cir. 2006) (same); *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 380-83 (5th Cir. 2004) (same); *Womack+Hampton Architects, LLC v. Metric Holdings Ltd. P'ship*, 102 F. Appx. 374, 383-84 (5th Cir. 2004) (same); *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 817 (5th Cir. 1997) (same).

In its order disposing of Serca's JMOL motion, the district court engaged in a *Fogerty*-factor analysis through the lengthy reasoning below.

> Regarding Serca's request for additional attorneys' fees and costs tied to the competing DMCA claims and declaratory judgment claim on which it prevailed, the Court denies Serca's Motion to the extent it attempts to recover "updated" fees and costs incurred through trial in the total amount of $629,518.45— an amount far in excess of that which would correspond to those hours reasonably expended to achieve its partial success. [Remex and Midas] also argue that additional fees are unavailable for Serca's successful defense of [Remex and Midas'] DMCA claim and prosecution of its own, upon weighing the factors relevant to awarding fees in a copyright action, because "[Remex and Midas] had a good-faith belief that the subject songs were theirs to digitally transmit and distribute in the United States," and since no need exists to compensate Serca for its defense of a bad-faith filing, or to deter the same in the future. [Remex and Midas] further insist that Serca's inequitable conduct, in altering the contract on which the adjudication of rights is based, counsels against any award of fees. And since "[t]he only way Serca can obtain attorney's fees for partially prevailing on its declaratory action is if the Court finds that a fee award would be appropriate under the Copyright Act," [Remex and Midas] ask the Court to deny Serca's request for fees tied to its declaratory judgment claim for the same reasons.

> As the jury's verdict on the DMCA claim required a finding that Remex knew of the falsity of its counter-notifications, [Remex and Midas'] good-faith and equitable arguments lose some of their force, but ***in the Court's view***—and despite Serca's insistence to the contrary—they retain validity. In deciding the DMCA claim, the jury had before it the Court's instruction that Serca had certain exclusive rights to the subject media, but the parties litigated the exclusivity issue extensively

before its resolution by motion, and the Court cannot say that the legal positions taken by [Remex and Midas] on this issue, based on the totality of the evidence, were frivolous or improperly motivated, or that they beg for compensation or deterrence. They were, *in the Court's view*, objectively reasonable, a factor to which courts should give "substantial weight." As Serca's successful defense of [Remex and Midas'] DMCA claim and partial victory on its declaratory judgment claim both turned entirely on the Court's resolution of the (reasonably) disputed exclusivity issue, for the same reasons, the Court finds that no additional fees are warranted. Serca's own DMCA claim on which it prevailed in part—as against Remex, and only with respect to put-back notices issued to YouTube—similarly turned on this issue, but also on the jury's finding that statements within the counter-notifications were false, in which case the balance of the relevant factors counsels in favor of awarding fees to Serca on this claim. The jury heard evidence of the time expended by Serca's counsel throughout the life of the litigation and settled on an amount within the bounds of reasonableness, which the Court will not augment or disturb.

ROA.4155-57 (citations omitted; emphasis added).

### *Frivolousness & Objective Reasonableness*

The *Fogerty* factors of frivolousness and objective reasonableness are often considered together. *See, e.g., Canadian Standards Ass'n v. P.S. Knight Co., Ltd.*, No. 1:20-CV-01160, 2025 WL 880254, at *2 (W.D. Tex. Mar. 12, 2025); *CoreClarity, Inc. v. Gallup, Inc.*, No. 4:20-CV-00601, 2020 WL 6741962, at *2 (E.D. Tex. Nov. 17, 2020). In *Kirtsaeng v. John Wiley & Sons,*

*Inc.*, the Supreme Court addressed what weight should be afforded to the objective-reasonableness factor, explaining:

> No matter which side wins a case, the court must assess whether the other side's position was (un)reasonable. And of course, both plaintiffs and defendants can (and sometimes do) make unreasonable arguments. Kirtsaeng claims that the reasonableness inquiry systematically favors plaintiffs because a losing defendant "will virtually *always* be found to have done something culpable." But that conflates two different questions: whether a defendant in fact infringed a copyright and whether he made serious arguments in defense of his conduct. Courts every day see reasonable defenses that ultimately fail (just as they see reasonable claims that come to nothing); in this context, as in any other, they are capable of distinguishing between those defenses (or claims) and the objectively unreasonable variety. And if some court confuses the issue of liability with that of reasonableness, its fee award should be reversed for abuse of discretion.

> All of that said, *objective reasonableness can be only an important factor in assessing fee applications—not the controlling one*. As we recognized in *Fogerty*, § 505 confers broad discretion on district courts and, in deciding whether to fee-shift, they must take into account a range of considerations beyond the reasonableness of litigating positions. That means in any given case a court may award fees even though the losing party offered reasonable arguments (or, conversely, deny fees even though the losing party made unreasonable ones). For example, a court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses. Or a court may do so to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case. Although objective reasonableness carries significant weight, *courts must view all the circumstances of a*

*case **on their own terms***, in light of the Copyright Act's essential
goals.

579 U.S. at 207-09 (emphasis added).

Serca contends the jury's DMCA-liability finding—with its requisite
factual determination that Remex knowingly made a false statement—
compels the district court to conclude that Remex's legal position was
frivolous and objectively unreasonable. But this contention is at odds with
*Kirtsaeng*, which commands district courts to "view all the circumstances of
a case on their own terms[.]" *Id*. at 209. In the instant case, the district court
followed that command. ROA.4155-57 (explaining why "in the Court's view"
Remex and Midas' claims and defenses were valid and objectively
reasonable). Thus, irrespective of the jury's liability finding, the district court
was free to conclude that Remex and Midas had colorable, good-faith
arguments for why the subject media was theirs to digitally transmit and
distribute in the United States. This conclusion is particularly warranted given
the *undisputed* evidence that

- Remex and Midas had a contract with La Leyenda that—at least on
  paper—afforded them said right;

- La Leyenda represented in said contract that there was no legal
  impediment to the rights La Leyenda sought to bestow on Remex
  and Midas;

- Remex and Midas produced, recorded, and paid all expenses associated with the creation of the subject media; and

- at the time Remex and Midas brought their DMCA claim, no court had determined (1) that La Leyenda's contract with Serca-Mexico remained in effect, (2) that La Leyenda's recording of the subject media constituted a breach of La Leyenda's contract with Serca-Mexico, or (3) that the contractual rights afforded to Remex and Midas through their contract with La Leyenda were encumbered by La Leyenda's outstanding contractual obligations to Serca-Mexico.

ROA.2393-95, 4090-91.

Furthermore, the record before the district court reflects that Serca itself was unsure as to why it was entitled to prevail on the competing DMCA claims. This is evidenced by Serca's first MSJ, which was filed on January 24, 2019 and ultimately denied. ROA.339, 560. In that first MSJ, Serca failed to see the relevance of the Mexican Judgment and thus did not provide it as supporting evidence—even though Serca had the Mexican Judgment translated by November 15, 2017 (fifteen months prior to the filing of the first MSJ). ROA.339, 1714. Thus, if Serca itself did not fully grasp the controlling legal basis for its position, it would be improper to conclude that Remex and Midas' contrary position lacked good-faith grounding. Serca's own difficulty

in recognizing the significance of the very evidence through which it obtained declaratory relief and prevailed the DMCA claim against it warrants affording Remex and Midas the benefit of the doubt and supports the view that their arguments, though unsuccessful, were advanced in earnest and with a reasonable legal basis.

### *Motivation*

In assessing the "motivation" factor against a claimant, a court considers whether there are indications the claimant prosecuted the suit with malevolent intent. *See Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008). "Infringement claims brought to protect copyrights have proper motivation, whereas suits brought with 'malevolent intent' do not." *Berg v. M&F W. Prods., Inc.*, No. 6:19-CV-00418, 2021 WL 2646223, at *3 (E.D. Tex. June 28, 2021) (citations omitted); *see Virgin Records Am.*, 512 F.3d at 726 (affirming district court's denial of fees to prevailing defendant where district court "found no indication that Plaintiff 'prosecuted this suit with malevolent intent'").

Here, the district court expressly found that Remex and Midas' legal positions were not "improperly motivated." ROA.4157. In arriving at this finding, the district court was not limited to considering only that which was presented to the jury; rather, it was permitted to consider the full history of the

underlying litigation. That full history reflects that Remex and Midas had wished to avoid the underlying litigation—as evidenced by the fact that Serca's takedown notices began no later than March 14, 2017, yet Remex and Midas did not initiate the underlying litigation to address those takedown notices until nearly seventeen months later on August 9, 2018. ROA.36, 1313. Such a prolonged delay is inconsistent with a party acting out of malice or in bad faith, and instead suggests deliberation and restraint.

### *Need to Advance Considerations of Compensation and Deterrence*

"Compensation is available when requiring a party to bear its own costs and fees would run afoul of the purpose of the Copyright Act to promote the progress of science and useful arts." *Spear Mktg., Inc. v. Bancorpsouth Bank*, No. 3:13-CV-03583, 2016 WL 193586, at *7 (N.D. Tex. Jan. 14, 2016), *aff'd*, 844 F.3d 464 (5th Cir. 2016). "Compensation works hand-in-hand with deterrence. Courts award fees to deter future plaintiffs from bringing *similar frivolous or unreasonable claims*." *Id*. at *8 (emphasis added). In affirming judgments where the prevailing copyright party was denied fees, this Court has repeatedly concluded that district courts are justified in finding that the

compensation-and-deterrence factor does not support a fee award if they have already concluded that the other factors do not support an award.[11]

Here, the district court expressly found that Remex and Midas' legal positions do not "beg for compensation or deterrence." ROA.4157. This finding was supported by the district court's determination that the other *Fogerty* factors do not support a fee award. *See supra* n.11. Additionally, this suit did not involve the kind of facts that implicate the Copyright Act's purpose (i.e., the promotion of the progress of science and useful arts). *See, e.g., Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018) ("Turchin's conduct—pirating and distributing dozens of copies of Glacier's film—does not promote the Progress of Science and useful Arts by assuring authors the right to their original expression and encouraging other

---

[11] *See, e.g., Macro Niche Software*, 603 Fed. Appx. at 353 ("The [trial] court also found that there was no evidence of bad faith motivation on the Plaintiffs' part, and because the claims were not unreasonable and there was no bad faith, the need for compensation and the deterrence of future unmeritorious suits would not be served by an award of attorney's fees in this case. . . . [T]here is no basis to overturn the district court's . . . conclusion that attorney's fees are not appropriate in this case."); *Virgin Records Am.*, 512 F.3d at 727 ("[T]he [trial] court concluded that awarding Thompson attorney's fees would not advance considerations of compensation and deterrence. These Plaintiffs should not be deterred from bringing future suits to protect their copyrights because they brought an objectively reasonable suit. . . . This court sees no abuse of discretion in the district court's denial of Thompson's motion for attorney's fees."); *Positive Black Talk*, 394 F.3d at 382 (holding that district court properly applied *Fogerty* factors where the district court provided the following reasoning for its denial of fees: "The court is convinced that PBT's claims were brought in good faith. Therefore, an award of attorney's fees would not serve to deter future meritless litigation brought by other parties." (brackets omitted)).

to build freely upon the idea and information conveyed by a work." (brackets and internal quotation marks omitted)). If anything, Remex and Midas' DMCA claims were intended to promote the progress of useful arts because they brought suit with the understanding that Serca was unlawfully interfering with their online distribution of the subject media (original lyrics, melodies, and recordings that they themselves created), which in turn was interfering with their ability to create additional artistic content with La Leyenda.

The district court also correctly recognized that there was no evidentiary basis to believe that Remex and Midas were or would become vexatious litigants, or that they were likely to continue to bring DMCA claims against Serca in relation to the subject media. It is undisputed that La Leyenda has fulfilled its contractual obligations to Serca-Mexico, which means there is no reason to believe that Remex/Midas and Serca-Mexico/Serca are likely to claim competing copyright interests in any music beyond the subject media. The district court also had no evidentiary basis for believing that a fee award was needed to deter Remex and Midas from doing anything further with the subject media that would contravene the final judgment. Remex and Midas' proven reluctance to give Serca an excuse for any further conflict is evidenced by the fact that—shortly before the commencement of the underlying litigation—Remex and Midas pulled down the subject media themselves from

all streaming platforms so as to avoid heightened conflict with Serca.[12] ROA.574-77.

Serca contends that Remex and Midas "made knowing misrepresentations on *numerous* occasions to *multiple* online platforms," which thus justifies an award of fees. APPELLANT'S BRIEF at 37 (emphasis added). But the jury's verdict does not support this contention. First, YouTube was the only service provider the jury considered. Second, the jury was asked only whether Remex violated the DMCA, not how many times. ROA.3848-49. The charge permitted the jury to return a "Yes" answer upon finding a single violation. It did not require, or even instruct, the jury to determine the number of violations, nor did the verdict form offer a mechanism to make such a finding. Accordingly, the jury's affirmative response cannot be assumed to encompass multiple violations. But even if one was to speculate that the jury found more than one violation, the most the jury

---

[12] On appeal, Serca seeks to portray Remex and Midas as though they have an insatiable appetite for copyright infringement and exploitation of the subject media. Yet, in its first MSJ, Serca argued that it was entitled to summary judgment on Remex and Midas' DMCA claim because the subject media had not been taken down by any service provider, but had instead been "voluntarily" taken down by Remex and Midas themselves. ROA.344. During the pendency of the underlying suit, Remex and Midas only restored the subject media to the service providers when it obtained the blessing of Serca and the district court. ROA.2461-63, 3459-60, 3581 (n.10).

could have found was two—for only two counter-notifications to YouTube were presented at trial. ROA.4072, 4150.

### *Prevailing Party's Inequitable Conduct*

Though no further justification is needed to warrant the denial of a fee award under the Copyright Act, it merits noting that a prevailing party's inequitable conduct can act as an additional *Fogerty* factor and negate a determination that a fee award advances the Copyright Act's purpose of promoting the progress of science and useful arts. *See Kirtsaeng*, 579 U.S. at 202 (recognizing that *Fogerty* factors are nonexclusive factors); *Womack+Hampton Architects*, 102 Fed. Appx. at 383-84 ("Finally, the magistrate concluded that awarding TCR and Chiles fees would not advance considerations of compensation and deterrence. In fact, TCR has essentially conceded that it did something wrong—it did not pay the required reuse fee. It is difficult to see how rewarding a company that breached its contract to pay an author could advance the Copyright Act's purposes.").

In this case, the district court was free to consider this reality: the Mexican Judgment relied on to support a determination that Serca-Mexico (and by assignment, Serca) has a right of U.S. distribution and digital transmission in the subject media is the same document that evidences how Serca-Mexico's fraudulent conduct resulted in a litigation snowball that

culminated in the underlying suit. More specifically, the Mexican Judgment expressly finds that Serca-Mexico—acting through its then-president, Servando Cano Rodriguez (who was also Serca's president)—fraudulently altered the Serca-Mexico Contract so as to conceal the fact that it was executed in 2011 and was to expire in 2016. In arriving at this finding, the court that issued the Mexican Judgment considered the following evidence:

> It is also observed that within the investigation binder an interview was made to a person named JUANA MARIA ARGIL RODRIGUEZ, who stated that she worked for him on June of 2014 two thousand fourteen; . . . she also stated that in the same month of February of the year 2011 two thousand eleven, the members of the musical band "LA LEYENDA" came over to sign the renewal of the agreements (02 two agreements one of Representation and Exclusivity, and the other of the Record Company that they had with SERCA); agreements that she printed in the computed [sic] without making any modification; and that eventually Mr. SERVANDO CANO RODRIGUEZ brought her to her desk and signed agreements on February of 2011 two thousand eleven, and he asked her to make a modification of the date of the signature and to place the date of expiration and that since it was difficult to make such correction in the computer, Mr. SERVANDO CANO RODRIGUEZ ordered her to make the corrections with the typewriter, and therefore she added to the agreements with the electric typewriter, the final 2 two of 2012 two thousand and twelve and added (EXPIRING IN 2017) clarifying that when she did this modification the members of the band "LA LEYENDA" were not present.

ROA.1763.

If not for Serca-Mexico's fraudulent conduct in altering the Serca-Mexico Contract and later presenting that visibly-altered contract to La Leyenda, it is highly conceivable that (1) there would have never been any dispute between La Leyenda and Serca-Mexico as to the commencement and termination dates of the Serca-Mexico Contract; (2) a rightly-frustrated La Leyenda would have never approached Remex when they did with what has since been shown to be an incorrect understanding of its then-existing contractual relationship with Serca-Mexico; (3) La Leyenda and Remex would have never recorded the subject media when they did; and (4) in the absence of the subject media, there would have been no necessity for this litigation. Serca—while standing in Serca-Mexico's shoes—should not be awarded fees and expenses for responding to litigation that is the byproduct of Serca-Mexico's fraudulent conduct (particularly when Serca-Mexico and Serca's shared president, Cano, performed said conduct). It is Serca-Mexico's fraudulent conduct—in seeking to utilize the alteration to improperly stifle La Leyenda's ability to create music with another record label—that is at odds with promoting the progress of useful arts.

### *Final Comments*

Serca critiques the district court for "describ[ing] attorneys' fees as the only permissible measure of damages under the facts of this case[.]"

APPELLANT'S BRIEF at 33. But the district court correctly described it as such because

- Serca's recovery of damages through its DMCA claim was governed by § 512(f), which limited Serca's recovery to "damages, including costs and attorneys' fees, incurred . . . by any copyright owner or copyright owner's authorized licensee . . . who is injured . . . as a result of the service provider relying upon such misrepresentation . . . in replacing the removed material or ceasing to disable access to it, " 17 U.S.C. § 512(f);

- the district court had already granted summary judgment so as to preclude Serca from seeking actual damages at trial; and

- that ruling—in combination with § 512(f)—meant that Serca could only seek to recover as its damages those attorney fees that were incurred as a result of YouTube replacing the subject media or ceasing to disable access to it. *See* ROA.3850.

Though Serca accuses "the district court [of] conflat[ing] compensatory damages under the DMCA . . . with attorneys' fees awarded afterwards to the prevailing party by the court," it is actually Serca that sought to conflate the two by tendering a proposed damage question that would have authorized the jury to award fees beyond the scope of what § 512(f) contemplates—namely,

fees that were not incurred as a result of YouTube's replacement of removed material. APPELLANT'S BRIEF at 33-34 & n.8.

### *Conclusion*

For all the above reasons, the Court should hold that the district court properly applied the *Fogerty* factors and did not abuse its discretion in concluding that those factors did not warrant an award of fees to Serca.

## III. The district court did not abuse its discretion in refusing to afford Serca greater declaratory relief.

"A district court's decision to grant or to deny declaratory relief is reviewed for abuse of discretion." *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 218 (5th Cir. 1998); *see Perez v. Pinnacle Clinical Research, PLLC*, No. 5:20-CV-00112, 2020 WL 13120612, at *1 (W.D. Tex. June 5, 2020) ("Defendant's argument for dismissal ignores the wide latitude and discretion that federal courts have in determining whether to entertain a request for declaratory relief, and if so, *the scope of such relief*." (emphasis added)). A court abuses its discretion when it acts in an unreasonable or arbitrary manner without reference to any guiding rules and principles.[13] *U.S. v. M/Y Galactica Star*, 13 F.4th 448, 453 (5th Cir. 2021).

---

[13] On appeal, Serca contention that a de novo standard applies defies logic and doctrine. Under Serca's theory, a district court that denies all requested declaratory relief is entitled to a deferential review, but a district court that thoughtfully grants some relief while declining other portions suddenly loses that deference and is reviewed de novo. That

The two principal criteria that guide a district court's decision of whether to issue a declaratory judgment concern (1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) whether it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523 (5th Cir. 2016). Here, Serca complains that the district court erred by (1) refusing to declare that Remex and Midas lack a valid copyright in the subject media; and (2) refusing to declare the Chavez Contract void. APPELLANT'S BRIEF at 42-43. But none of those declarations were necessary to clarify and settle the legal relations at issue. As the district court repeatedly observed, Serca was narrowly before it as an assignee of Serca-Mexico's right to distribute La Leyenda's music in the United States—nothing more. ROA.2489-91, 4152-53. By declaring in the final judgment "that Serca had and now holds exclusive rights to the U.S. distribution and digital transmission of the song and video recordings made the subject of this lawsuit," the district court afforded all the declaratory relief that was needed to clarify and settle the legal relations at issue (i.e., whether Serca or Remex had the exclusive right to dictate and benefit from the subject

---

framework turns equitable discretion on its head: it punishes a district court for tailoring relief with care and rewards the blanket denial of all relief with greater appellate protection.

media's distribution in the United States). ROA.4161. Because the declaratory relief that was provided does all that is needed to terminate and afford relief from the uncertainty over who has said distribution right, the declaratory relief denied to Serca does nothing to further achieve that end.

In arguing for the declaratory relief denied to them, Serca needlessly makes some misleading statements to the Court.

- Serca cites to pages ROA.3369 and ROA.3375 as evidence that Remex and Midas have admitted to not having any copyright interest in the subject media. But in those pages, Remex and Midas simply acknowledge that—*in the absence of any contract between them and La Leyenda*—they would have no interest in La Leyenda's music. Those acknowledgements were presented to the jury (ROA.5248-49), which Serca also falsely relies on as evidence of a supposed admission that no copyright interest exists. APPELLANT'S BRIEF at 42.

- Serca notes that Resendez (Cano Jr.) "testified at trial that the infringing music and videos remained available on Remex's online channels up to the present, though the Chavez brothers claimed to have taken them down"—thus suggesting that Remex was actively violating Serca's right of U.S. distribution even after the district

acknowledged that right. APPELLANT'S BRIEF at 42. But Serca conveniently forgets to inform the Court that Remex—after having removed the subject media from streaming platforms—obtained Serca's agreement (and the district court's blessing) to return the subject media to streaming platforms while litigation was ongoing. ROA.2461-63, 3459-60, 3581.

Furthermore, the Court must recognize that the district court's evidentiary and legal basis for the declaratory relief granted does not similarly support the declaratory relief that was denied. For example, whereas the district court read the Mexican Judgment as "accept[ing] the premise that sound recordings to which Serca-Mexico had exclusive rights included recordings made by third parties" (ROA.2030), that judgment could not similarly be read as accepting the premise (1) that the Chavez Contract was void or (2) that Remex had no copyright interest over the subject media itself (e.g., an interest in the subject media's lyrics, notes, and original recordings).

Lastly, the record simply does not reflect that the district court acted "in an unreasonable or arbitrary manner without reference to any guiding rules and principles" when it denied the additional declaratory relief sought. *See M/Y Galactica Star*, 13 F.4th at 453. For example, the rules and principles pertinent to the district court's denial of a declaration finding that Remex and

Midas have no copyright interest in the subject media can be found in the

Clarification Order:

> [T]he Court never found that Serca holds a copyright to La
> Leyenda's music; it recognized that "sound recordings" extended
> federal copyright protection are separate from "musical works"
> consisting of "the notes and lyrics of the song[s] as they appear
> on sheet music." A copyright to sound recordings, which are
> recorded musical works, gives the owner exclusive rights of
> distribution and digital transmission, which may be transferred
> by "assignment…, exclusive license, or any other
> conveyance"—precisely what happened in this case. *Because* of
> the separateness of La Leyenda's music and the recordings of
> that music, as produced and distributed by [Remex and Midas],
> Serca has no right to the music itself, and *cannot* independently
> record and release it. It can, however, distribute the subject
> recordings in the United States.

ROA.2490-91 (citations omitted). The district court provided further

reasoning for the denial of all additional declaratory relief in the Second

Dispositive Order, stating:

> [T]he Court . . . determin[ed] that [Serca], as Serca-Mexico's
> assignee, had and has exclusive rights to the U.S. distribution and
> digital transmission of the subject media. . . . Contrary to
> [Serca's] insistence, the Court's finding disposes of no more; that
> [Serca] had and retains exclusive rights to U.S. distribution and
> digital transmission of the subject media does not allow the Court
> to declare broader rights of copyright and contract not assigned
> to [Serca] by Serca-Mexico, who is not a party to this case.

ROA.3579. The district court then explained itself even further in its order

denying Serca's JMOL motion:

> Serca's [m]otion also seeks relief not yet awarded, but
> allegedly warranted by the Court's rulings, the jury's verdict, and
> "conclusive" trial evidence. First among Serca's requests are that
> the Court expand its declaratory judgment that Serca, as Serca-
> Mexico's assignee, had and has exclusive rights to the U.S.
> distribution and digital transmission of the subject songs and
> videos, to now adjudge that Serca has all rights of copyright and
> administration to the subject media and [Remex and Midas] have
> none, that any copyright registrations of the songs and videos by
> [Remex and Midas] are invalid, and that any contract entered into
> by [them] pertaining to the songs and videos are null and void.
> But the record does not warrant this relief, and in fact counsels
> against it: first, because the Court's order limiting Serca's
> assigned rights expressly "acknowledge[d] that if the Cano
> family testimony supplies the oral assignment sanctioned by
> written instrument, this testimony supports the existence of an
> assignment of rights of distribution (and therefore digital
> transmission) in the United States, without more," and the trial
> evidence to which Serca now appeals is the very same evidence
> considered by the Court in arriving at this determination. Also,
> as [Remex and Midas] point out, the Court has already held that
> its ruling that "Plaintiff [Serca] had and retains exclusive rights
> to U.S. distribution and digital transmission of the subject media
> does not allow the Court to declare broader rights of copyright
> and contract not assigned to Plaintiff by Serca-Mexico, who is
> not a party to this case." The Court instructed the jury in
> accordance with this limited exclusivity finding, thus the jury's
> verdict in favor of Serca on its DMCA claim does not support the
> additional declarations sought by Serca. For all of these reasons,
> Serca's request for a more expansive declaratory judgment must
> be denied.

ROA.4152-53 (citations omitted). Based on all this, the Court should hold that the district court did not abuse its discretion in declining to afford Serca the additional declaratory relief sought.

## IV. The district court did not abuse its discretion in refusing to afford Serca greater injunctive relief.

Relying on case law where a permanent injunction was challenged on appeal for being too broad, Serca asserts that the district court's refusal to provide a broader permanent injunction is a matter this Court reviews de novo rather than for an abuse of discretion. APPELLANT'S BRIEF at 40. But recent authority from this Court indicates that an abuse-of-discretion standard applies to challenges alleging that an injunction is too narrow. *See Rolex Watch USA, Inc. v. BeckerTime, LLC*, 96 F.4th 715, 720, 724-25 (5th 2024) (observing that the Court "review[s] the scope of the district court's injunction . . . for an abuse of discretion" and then assessing whether district court erred in affording narrow injunctive relief). That distinction reflects that "too little" relief involves a district court's equitable judgment, while "too much" relief raises legal questions about judicial overreach. Thus, narrower-than-desired injunctions are to be reviewed deferentially, while overbroad injunctions are subject to independent appellate scrutiny.

In its brief, Serca complains that the district court's permanent injunction "does not expressly forbid third parties from uploading La Leyenda

music," but Serca does not explain (1) how the district court has authority to bind unknown third parties or (2) how Remex has the ability to regulate such conduct. APPELLANT'S BRIEF at 44-45. Serca also complains that the permanent injunction does not preclude Remex from accepting payments from third parties who exploit the subject media on their own YouTube channels. *Id*. But this complaint presupposes (on the basis of nothing) that third parties will have the ability to continue sharing the subject media in the absence of it being shared by Remex. Further, though Serca points to trial testimony where Remex's representative acknowledges that third-party uploads of the subject media have resulted in some earnings, there is no evidentiary basis for believing those earnings go beyond a nominal amount— thus calling into question the significance of the additional injunctive relief sought. Lastly, Serca's brief does not attempt to explain how the district court's refusal to provide additional injunctive relief demonstrates (1) that the district court relied on clearly erroneous factual findings; (2) that the district court relied on erroneous conclusions of law; or (3) that the district court misapplied the law to its factual findings when fashioning injunctive relief. *See generally Ramsey v. Sheet Pile, LLC*, 130 F.4th 193, 202 (5th Cir. 2025) (listing circumstances in which a district court abuses its discretion).

**V.      The district court erred in denying all relief sought in Remex's renewed JMOL motion—for there was legally insufficient evidence to support the jury's DMCA findings.**[14]

Remex's renewed JMOL motion—filed after the jury returned its verdict but before entry of a judgment—has preserved Remex's ability to challenge the jury's findings on appeal. *See Shapiro v. Kelly*, No. 97-30183, 1998 WL 197793, at *4 (5th Cir. Apr. 1, 1998) (recognizing that one still complies with Rule 50(b) by filing a post-verdict JMOL motion before entry of judgment). Appellate courts "review *de novo* a ruling on a motion for JMOL, which may be granted if a reasonable jury would not have a legally sufficient evidentiary basis to find for a party that has been fully heard on an issue." *Miller v. Travis Cnty., Tex.*, 953 F.3d 817, 819 (5th Cir. 2020) (citations and quotation marks omitted).

---

[14] A large portion of the appellate record is under seal. Remex's appellate counsel can presently view that portion of the record ranging from ROA.1 to ROA.5713, but there are approximately 4,000 additional pages that cannot be viewed. Counsel filed an unopposed motion requesting access to the sealed portion on May 27, but that request remains pending as of the filing of this brief. To advance the legal-insufficiency arguments below, Remex will need to refer to a few of Serca's trial exhibits. The district court's docket sheet indicates that those exhibits appear in the appellate record starting at page ROA.5714. *See* ROA.23 (02/12/2024 entry). Record references for Serca's exhibits will thus entail a generic citation to ROA.5714, but Remex will also include reference to exhibit number and bates number to aid the Court in identifying what page(s) in the record are being discussed.

## A.      Jury Question No. 3: DMCA Liability

### 1.      There was legally insufficient evidence of reliance.

The jury charge instructed the jury that Serca must prove, by a preponderance of the evidence, that:

> (1) [Remex] stated to YouTube that the content was removed or disabled by mistake or misidentification;
>
> (2) [Remex] knew this statement was false;
>
> (3) *in reliance on **this statement***, YouTube replaced the content or ceased to disable access to it; and
>
> (4) [Serca] was injured as a result.

ROA.3848 (emphasis added). Thus, to find Remex liable, the jury had to conclude that YouTube replaced the subject media or ceased to disable access to it on the basis of a false statement—not on the basis of its general receipt of a counter-notification. Though the jury was permitted to make a finding based on circumstantial evidence, the charge instructed the jury that "[c]ircumstantial evidence is evidence that proves a fact from which you can *logically* conclude another fact exists." ROA.3831 (emphasis added).

Only two counter-notifications to YouTube were introduced at trial, both of which came in through Serca's Exhibit #25: (1) an undated and unsigned letter from the Chavezes ("the Chavez-Counter"); and (2) an undated email from Bruno Sanchez Valdez ("the Sanchez-Counter"). ROA.5714 (Exhibit #25 (Leyenda000319-000321, Serca041606-041607)).

Though Serca presented evidence showing that YouTube—in response to a counter-notice—either replaced a subject song or ceased to disable access to it, Serca did not present any evidence linking YouTube's action to a false statement within the Chavez-Notice or the Valdez-Notice.

The trial evidence reflects that YouTube had a number of different reasons for restoring the subject media—reasons that had nothing to do with any alleged false statement. The Chavez-Notice, for example, instructed YouTube to restore the subject media for these reasons:

- "The complainant, Serca Discos, Inc., has provided no copyright registration information or other tangible evidence that the material in question is in fact copyrighted[.]" ROA.5714 (Exhibit #25 ((Leyenda000319)).

- "The complainant has not followed the prescribed form for notification of an alleged copyright violation as set forth in the Digital Millennium Copyright Act. Specifically, the complainant has failed to: [i]nclude a written statement that the complainant has a good faith belief that use of the disputed material is not authorized by the copyright owner, its agent, or the law[;] [and] [i]nclude a written statement that the information in the notification is accurate, and under penalty of perjury, that the complainant is authorized to

act on behalf of the owner of an exclusive right that is allegedly infringed." ROA.5714 (Exhibit #25 ((Leyenda000320)).

Serca did not attempt to prove or argue at trial that any of the above statements were false (let alone knowingly false)—yet those statements provided YouTube with reasons for restoring the subject media irrespective of whether the Chavez-Notice or Valdez-Notice contained a false statement.

Serca also presented the jury with evidence that YouTube—upon its receipt of a counter-notification—had a practice of restoring content whenever the takedown-noticer failed to timely provide YouTube with evidence that a suit had been filed against the counter-noticer. ROA.5714 (Exhibit #25 ((Serca000096, Serca000122, Serca000124, Serca041606, Serca041610)). YouTube repeatedly notified Serca in March and April 2017 that it required evidence, within ten business days, of Serca having sued Remex for the infringements alleged. *Id*. Yet, the jury heard undisputed evidence that (1) Serca only filed suit after Remex filed suit; and (2) Remex initiated its suit on May 16, 2018 (over a year after YouTube's correspondence requesting proof of suit). ROA.4663-64, 4915.

In it order denying Remex's renewed JMOL motion, the district court addressed the above arguments as follows:

> Remex also disputes the sufficiency of evidence on the reliance element, asserting that the trial evidence did not "clearly

link" any statement within the two counter-notifications to an action taken on the part of YouTube to replace or cease to disable the subject media, which could have occurred for various other reasons. In essence, these arguments urge a sole causation standard dependent on direct rather than circumstantial evidence, without authority to support the use of this heightened standard. Since the jury heard some evidence that the subject media remained available on YouTube after the put-back notices—something YouTube could not have allowed without facing liability, but for its receipt of the notices—the jury had reasonable basis to determine that Serca had satisfied the reliance element of its claim.

ROA.4150-51 (citations and footnotes omitted).

Contrary to the district court's suggestion, Remex takes no issue with the jury looking at circumstantial evidence to assess proof of YouTube's reliance. Remex does take issue, however, with predicating a jury finding on circumstantial evidence from which multiple, equal inferences can be drawn.

A fact is established by circumstantial evidence when the fact may be fairly and reasonably inferred from the facts proven and circumstances adduced in the case. To support a conclusion, the circumstantial evidence must be capable of convincing a rational trier of fact that the conclusion is more probable than any other alternative. However, when meager circumstantial evidence is susceptible to equal inferences, a factfinder may not reasonably infer either ultimate fact from it. Similarly, no inference of fact may be drawn from a premise which is wholly uncertain, and inferences must be based on probabilities rather than mere possibilities. The conclusions based on inferences from

circumstantial evidence must not be the result of speculation and conjecture.

FEDERAL TRIAL HANDBOOK: Civil § 30:1, Westlaw (2024-2025 Edition); *see* 29A AM. JUR. 2D EVIDENCE § 1314 ("[W]hen meager circumstantial evidence is susceptible to equal inferences, a factfinder may not reasonably infer either ultimate fact from it.").

Based on the jury charge's instructions, Remex's DMCA liability could not be predicated on the mere determination that YouTube would not have restored the subject media in the absence of having received the Chavez-Notice and/or the Valdez-Notice. Rather, the evidence must support a determination that YouTube restored the subject media because it relied on a false statement within one of those notices ("the subject reliance"). The fact that the subject media was restored after a counter-notification, without more, is not circumstantial evidence that amounts to legally sufficient evidence of the subject reliance—for, in this instance, the act of restoration is "meager circumstantial evidence [that] is susceptible to equal inferences[.]" *Id*. YouTube's decision to restore the subject media does not support an inference of the subject reliance any more than it supports an inference that content was restored (1) due to Serca's failure to promptly provide YouTube with proof of suit as requested; (2) due to Serca's failure to provide a copyright registration or other tangible evidence, as stated in the Chavez-Notice; or (3) due to

Serca's failure to provide a takedown notice in the form prescribed by the DMCA, as explained in the Chavez-Notice. The restoration of content alone could not permit the jury to logically conclude that the subject reliance existed—only impermissible speculation could make that connection. *See* ROA.3831 (instructing jury that circumstantial evidence is "evidence that proves a fact from which [the jury] can *logically* conclude another fact exists" (emphasis added)).

## 2.    There was legally insufficient evidence of injury.

To reiterate, the jury charge instructed the jury that Serca must prove, by a preponderance of the evidence, that:

>    (1) [Remex] stated to YouTube that the content was removed or disabled by mistake or misidentification;

>    (2) [Remex] knew this statement was false;

>    (3) in reliance on this statement, YouTube replaced the content or ceased to disable access to it; and

>    (4) [Serca] was *injured* as a result.

ROA.3848 (emphasis added). At trial, the only "injury" the jury could consider in relation to the DMCA claim was the attorney fees, if any, that Serca incurred from YouTube restoring content to its platform as a result of a knowing misrepresentation in the Chavez-Notice and/or Valdez-Notice. ROA.3849. But as argued separately below, Serca failed to present legally sufficient evidence that any such fees were incurred. Accordingly, in the event

the Court rejects Remex's legal sufficiency challenge on the reliance element but sustains the legal sufficiency challenge to the jury's damage finding (as requested below), the Court should hold that there is legally insufficient evidence to sustain the DMCA-liability finding because there was no evidence of an injury.[15]

### 3.    Conclusion.

For all the above reasons, Remex asks the Court to reverse the district court's denial of its renewed JMOL motion and modify the judgment to strike the liability finding on the DMCA claim, along with all relief predicated on that finding.

---

[15] *See Lenz v. Universal Music Corp.*, No. 5:07-CV-0383, at 2010 WL 702466, at *10 (N.D. Cal. Feb. 25, 2010) ("A fair reading of the statute, the legislative history, and similar statutory language indicates that a § 512(f) plaintiff's damages must be proximately caused by the *misrepresentation to the service provider and the service provider's reliance on the misrepresentation*. Universal's argument that concluding otherwise would allow plaintiffs to satisfy the damage element of their claims merely by hiring an attorney and filing suit, thereby incurring 'costs and fees,' is well taken." (emphasis in original)); *see also Johnson v. New Destiny Christian Ctr. Church, Inc.*, No. 6:15-CV-01698, 2017 WL 1093446, at *5 (M.D. Fla. Mar. 23, 2017) ("A review of the Operative Complaint reveals that each factual allegation related to Johnson's *damages* stems from the prosecution of the Copyright Action rather than the removal of her videos from YouTube. This omission is fatal to a § 512(f) claim[.]" (emphasis in original)).

To the extent nominal damages can sustain the "injury" component of the DMCA claim, the jury was never instructed as much. ROA.3830-44. Nor was the jury ever instructed that the "injury" component could be satisfied with evidence of Remex's having obtained a profit from the subject media. *Id.*

### B.      Jury Question No. 4: Fees Incurred from DMCA Violation

Even if the finding of DMCA liability warrants affirmance, the Court should vacate the related award of $50,000 because there is legally insufficient evidence supporting it. ROA.3739-40, 4078-80. The jury's award was responsive to this question:

> What sum of money, if paid now in cash, would fairly and reasonably compensate [Serca] for the attorneys' fees it incurred, if any, as a result of YouTube replacing *the content* or ceasing to disable access to it?

ROA.3850 (emphasis added). The question awards fees in the form of damages. When properly read in the context of Question No. 3, "the content" being referred to in Question No. 4 are those specific YouTube videos that were restored as a purported result of a knowing misrepresentation in the Chavez-Notice and Valdez-Notice (assuming the jury found DMCA violations as to both). Accordingly, Question No. 4 essentially asked the jury to ascertain what amount would fairly and reasonably compensate Serca for the attorney fees it incurred as a result of YouTube replacing the videos at issue in the Chavez-Notice and Valdez-Notice.

If a knowing misrepresentation in the Chavez-Notice and/or Valdez-Notice resulted in YouTube restoring the videos at issue in those notices, the consequence of that restoration ceased when Remex removed the subject

media itself from all service providers. The jury heard undisputed evidence that this occurred in mid-April 2017. ROA.4783-89, 4795, 4819. But the jury did *not* hear evidence about what attorney fees Serca incurred as a result of YouTube's restoration of content prior to mid-April 2017. Serca's evidence of its fees came from the testimony of its attorney, Yocel Alonso, who also presented the jury with fee invoices that were marked as Serca's "Exhibit 55." ROA.5253-66, 5282-317, 5701, 5714. The earliest billing entry in Exhibit 55, however, was from June 8, 2018: a date that comes approximately (1) fourteen months after Remex removed any of the subject media from YouTube; and (2) three weeks after Remex initiated the underlying lawsuit on May 16, 2018. As for Alonso's testimony, he told the jury nothing about what legal work was done between the brief period separating YouTube's restoration of content and Remex's self-removal of that content in mid-April 2017. ROA.5253-66, 5282-317.

Alonso's testimony and the proffered invoices provided the jury with no means of knowing (1) what sort of legal work, if any, was performed for Serca "as a result of YouTube replacing the content" (ROA.3850); (2) who performed that legal work; (3) how much time was spent doing each discrete legal task performed, if any; or (4) how much time was spent in total completing all legal work performed in connection with YouTube's

restoration of content. The complete lack of such evidence rendered the jury unable to intelligently assess "[w]hat sum of money . . . would *fairly* and *reasonably* compensate [Serca] for the attorneys' fees it incurred . . . as a result of YouTube replacing the content or ceasing to disable access to it[.]" ROA.3850. *See Eleven Line, Inc. v. N. Tex. State Soccer Ass'n, Inc*., 213 F.3d 198, 209 (5th Cir. 2000) ("Damage assumptions that find no support in the actual facts of the case cannot support a verdict."); *Keener v. Sizzler Family Steak Houses*, 597 F.2d 453, 456 (5th Cir. 1979) (recognizing that a "verdict for damages may not be based on speculation and guesswork").

The jury, for example, received evidence that Serca's lead trial counsel, Yocel Alonso, had an hourly rate of $395.00. ROA.5262. If the jury speculated (or somehow reasonably inferred) that Alonso performed work for Serca to address the limited-in-time restoration of YouTube content, the jury would have had to conclude that Alonso billed approximately 126.6 hours for that work (126.6 x $395 = $50,007). Yet, the invoices provided to the jury through Serca's Exhibit 55 do not account for a single hour of work that was performed at or around the time that YouTube would have restored the content at issue—let alone account for 126.6 hours of such work. Alonso's testimony to the jury similarly fails to account for any such work. ROA.5253-66, 5282-317. The "evidence" supporting the jury's award of $50,000 thus no

better supports that amount than it supports an award of $500 or $5,000—for the jury failed to receive legally sufficient evidence that would support any award amount it landed on.

For all the above reasons, Remex asks the Court to reverse the district court's denial of its renewed JMOL motion and modify the judgment to strike the award of $50,000.

<u>**CONCLUSION**</u>

Serca has not demonstrated reversible error with respect to any of the rulings it challenges on appeal. Its Rule 12(c) arguments were inadequately preserved, and its fee-related contentions ignore the district court's careful application of controlling precedent. Serca also fails to show that the district court's refusal to grant additional declaratory and injunctive relief was the product of legal error or abuse of discretion. At most, Serca expresses disagreement with how the district court exercised its judgment— disagreement that does not justify appellate intervention. Remex, on the other hand, has shown that its renewed JMOL motion should have been granted— for there was legally insufficient evidence to support the jury's DMCA liability and damages findings.

For these reasons, the Court should affirm the judgment in part and reverse in part by striking the jury's DMCA findings and the related award of

$50,000. Remex and Midas request all other relief to which they have shown themselves entitled.

Respectfully submitted,

/s/ ***Ricardo Pumarejo Jr.***

Ricardo Pumarejo Jr.
PUMAREJO LAW
1606 W. 42nd Street
Austin, Texas 78756
ricardo@pumarejolaw.com

Raymond L. Thomas
RAY THOMAS, PC
4900-B North 10th Street
McAllen, Texas 78504
rthomas@raythomaspc.com

*Counsel for Appellees*

## CERTIFICATE OF SERVICE

I certify that on June 30, 2025, I electronically filed the foregoing instrument with the Clerk of Court by using the CM/ECF system which will send an electronic notice to all attorneys of record.

/s/ **Ricardo Pumarejo Jr.**

Ricardo Pumarejo Jr.

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of FED. R. APP. P. 28.1(e) because, excluding parts of the document exempted by FED. R. APP. P. 32(f), this document contains 14,324 words.

2.     This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionately spaced typeface using the most current version of Microsoft Word for Microsoft 365.

/s/ *Ricardo Pumarejo Jr.*
Ricardo Pumarejo Jr.